# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-02035-SCT

*TERRANCE EADDY*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 09/28/2009 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: W. DANIEL HINCHCLIFF |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| | JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND RENDERED - 06/23/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., DICKINSON, P.J., AND KITCHENS, J.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This case involves the search and seizure of evidence from Terrance Eaddy after officers had stopped him to execute arrest warrants for Wendell Barnes. Because the trial court committed clear error in denying Eaddy's motion to suppress, we reverse and render his conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.     A caller informed Claiborne County Sheriff's Department deputies James Jefferson and Willie Edwards that Wendell Barnes was in Port Gibson driving a red Cadillac with

Texas plates. The officers knew Barnes had three arrest warrants. Soon, they happened upon a vehicle that fit the caller's description and initiated an investigatory stop. The parties dispute the order of the remaining sequence of events, but ultimately, Officer Jefferson searched and arrested the driver, Terrance Eaddy, for possession of cocaine with intent to distribute and possession of a weapon by a convicted felon. Eaddy filed a motion to suppress evidence of the cocaine and the gun discovered in the search.

*Motion-to-Suppress Hearing*

¶3.	Officer Jefferson provided the only testimony at Eaddy's motion-to-suppress hearing. He explained that, on the day of Eaddy's arrest, an unnamed informant[1] had called Officer Edwards on his personal cell phone and had stated that Wendell Barnes was in town driving a red Cadillac with Texas plates. Officer Edwards had related the caller's information to Officer Jefferson. Both officers knew that Wendell Barnes had three arrest warrants,[2] but only Officer Edwards could identify Barnes. Eventually, the officers stopped a vehicle fitting the caller's description. According to Officer Jefferson, when he approached the car, he saw the butt of a gun under the driver's seat, smelled alcohol, and saw an empty liquor bottle. So, he took the driver from the vehicle to pat him down for officer safety. During the search, he discovered two pill bottles that each appeared to hold cocaine. He explained that one pill bottle contained a "white substance" separated into individual bags, and the other

---

[1] The record does not indicate that Officer Edwards received the call from law-enforcement personnel.

[2] The warrants had been executed about two years before the relevant day and were entered into evidence.

2

bottle contained a white substance cut into blocks. After he had conducted the search, Officer Edwards told him the suspect was not Barnes.

¶4.     On cross-examination, Eaddy's counsel pointed out that Officer Jefferson's arrest report contained a different version of the events. In his report, Officer Jefferson explained that he had "noticed" the driver was not Wendell Barnes after he had asked him to exit the car. But since he had seen a liquor bottle by the driver's seat, he had frisked the driver for his safety. Officer Jefferson's report further explained that, after finding the two pill bottles with cocaine, he then had handcuffed Eaddy, had searched the car, and had discovered the gun. Aside from the report, Eaddy's counsel questioned Officer Jefferson as to the validity of Barnes's arrest warrants.

¶5.     Officer Jefferson attempted to clarify the differences between his report and his testimony before the court. He explained that his report stated when he had told Eaddy that he had seen the gun and not when he actually had seen it. In other words, although his report indicated that the liquor bottle had prompted the protective search, the gun was actually the reason. Thus, Officer Jefferson did not collect the liquor bottle from the car, and Eaddy was not charged with driving under the influence. He further explained that "any time you stop a car, you're going to search the individual and get [him] out of the car for officer safety."

¶6.     In ruling on Eaddy's motion to suppress, the court recognized that Officer Jefferson's report recounted a different version of the events; typically, an officer's report would clearly reflect that the presence of a firearm had raised the officer's suspicion. But the trial court noted that an arrest report does not represent the officer's entire description of the arrest, and that no evidence contradicted Officer Jefferson's testimony before the court.     More

3

specifically, the court found that the officers had acted on a warrant in stopping the vehicle. After Officer Jefferson had seen a firearm and had smelled alcohol, he had conducted a protective search for his safety. Therefore, the court denied Eaddy's motion to suppress evidence of the cocaine and the gun derived from the search.

*Eaddy's Trial*

¶7. Officer Jefferson provided the same testimony regarding the incident at Eaddy's trial. Additionally, Eaddy gave his version of the search and arrest. According to Eaddy, on the day of his arrest, he had been dating Wendell Barnes's sister, Thandiwe. When Thandiwe had picked him up in Wendell's car for lunch that day, Eaddy explained that he did not see any drugs or a gun when he entered the car. On their way to lunch, the officers pulled them over. According to Eaddy, Officer Jefferson never asked him his name during the encounter. Eaddy explained, in relevant part, that he did not have any drugs on him and that if he had possessed drugs on his person, he would have disposed of them before a police search. Instead, Eaddy testified that Officer Jefferson had removed both the gun and the drugs from the car. Eaddy implied that Officer Edwards had encouraged Officer Jefferson to misrepresent where he had found the drugs.

¶8. The State called Officer Edwards to rebut Eaddy's accusations. Officer Edwards explained that he did not ask Officer Jefferson to misrepresent where he had found the drugs. Officer Edwards further testified that after they had made the traffic stop and had approached the car, he had told Officer Jefferson that Wendell Barnes was not in the car. In other words, Officer Edwards had identified Eaddy as the driver before Officer Jefferson had conducted the search.

4

¶9.     The jury found Eaddy guilty of possession with intent to distribute and acquitted him of possession of a weapon by a felon. Eaddy was sentenced to fifteen years in the custody of the Mississippi Department of Corrections. The court denied Eaddy's Alternative Motion for a JNOV or a New Trial, and Eaddy appealed.

## ISSUES

¶10.    Eaddy asserts the following issues, which we have rephrased for clarity:

> **I.      Whether the trial court erred in denying Eaddy's motion to suppress.**
>
> **II.     Whether the trial court erred in denying Eaddy's motion for a directed verdict or JNOV where the State provided insufficient evidence on the intent to distribute.**

As the first issue decides Eaddy's appeal, we decline to address the second issue. *See* M.R.A.P. 17(h).

## DISCUSSION

¶11.    The Court applies a mixed standard of review to Fourth-Amendment claims. ***Dies v. State***, 926 So. 2d 910, 917 (Miss. 2006). Whether probable cause or reasonable suspicion exists is subject to a de novo review. ***Id.*** But the Court limits the de novo review of the trial court's determination to "historical facts reviewed under the substantial evidence and clearly erroneous standards." ***Id.***

¶12.    Both the Fourth Amendment to the United States Constitution and Article III, Section 23 of the Mississippi Constitution protect an individual's right to be free from unreasonable searches and seizures. ***Id.*** at 917-18. *See also* U.S. Const. amend. IV; Miss. Const. art. 3, § 23; ***Graves v. State***, 708 So. 2d 858, 861 (Miss. 1997) (noting that Mississippi's

5

constitution provides greater protection from unreasonable search and seizure than the federal constitution).  The Court uses a two-part inquiry to determine the reasonableness of a search and seizure: "(1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place."  *Gonzales v. State*, 963 So. 2d 1138, 1141 (Miss. 2007).  As a general rule, the state and federal constitutions prohibit warrantless searches unless an exception applies.  *Id.* at 1142.  Unless the State proves that a warrantless search comes within an exception, all evidence seized from the search is inadmissible. *Jackson v. State*, 418 So. 2d 827, 829 (Miss. 1982). We address the investigatory stop and good-faith exceptions as they relate to the sequence of events in Eaddy's search and arrest.

## I.  Investigatory Stops

¶13.    Eaddy argues that the trial court erred in not making findings on the informant's reliability, and that information from an unnamed informant with undisclosed reliability does not establish reasonable suspicion for an investigatory stop.  In response, the State contends that Officer Jefferson's personal knowledge of Barnes's warrants provided reasonable suspicion for the investigatory stop.

¶14.    Police officers may detain a person for a brief, investigatory stop consistent with the Fourth Amendment when the officers have "reasonable suspicion, grounded in specific and articulable facts . . ." that allows the officers to conclude the suspect is wanted in connection with criminal behavior.  *Walker v. State*, 881 So. 2d 820, 826 (Miss. 2004) (citation omitted). *See also* *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968);  *Haddox v.*

6

*State*, 636 So. 2d 1229, 1234 (Miss. 1994) (citation omitted) ("Vehicles also may be the subject of an investigative stop.").

¶15. Grounds for reasonable suspicion to make an investigatory stop generally come from two sources: either the officers' "personal observation" or an informant's tip. *Williamson v. State*, 876 So. 2d 353, 355 (Miss. 2004) (citation omitted). *See also Florida v. J.L.,* 529 U.S. 266, 270, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000)). The officer's personal observation includes information from other law-enforcement personnel. *See Dies*, 926 So. 2d at 920 ("[R]easonable suspicion . . . can be transferred from officer to officer . . . ."). And an informant's tip may provide reasonable suspicion if accompanied by some indication of reliability; for example, reliability may be shown from the officer's independent investigation of the informant's information. *Florida v. J.L.*, 529 U.S. at 270. *See, e.g., McClellan v. State*, 34 So. 3d 548, 552 (Miss. 2010) (valid investigatory stop where officers further investigated "vague" information received from informant before making the stop); *Burchfield v. State*, 892 So. 2d 191, 194-95 (Miss. 2004) (reasonable suspicion for investigatory stop supported by store clerk's tip that described defendants who had purchased precursors and by officer's personal observation of defendants' purchases in vehicle described by clerk); *Williamson*, 876 So. 2d at 356 (reasonable suspicion for investigatory stop supported by tip from unnamed informant that described, in relevant part, the defendant and his vehicle and tag number, and by officer's subsequent verification of number).

¶16. But the scope of an investigatory stop is limited. *Floyd v. State*, 500 So. 2d 989, 992 (Miss. 1986). The scope of a search or seizure must relate to the initial circumstances that called for police action. *Haddox*, 636 So. 2d at 1234. Thus, when police detention exceeds

7

the scope of the stop, the stop becomes a "seizure," and the State must show probable cause. *Floyd*, 500 So. 2d at 992 (citation omitted).

¶17.    Based on the evidence in the record, the trial court committed clear error in finding that the officers had reasonably relied on the arrest warrants in making the investigatory stop. Here, although Officer Edwards had personal knowledge of Wendell Barnes's identity and both officers knew about his arrest warrants, the record does not reflect that either officer knew the description of Barnes's vehicle[3] before making the stop. *See Dies*, 926 So. 2d at 920.  Absent further independent investigation, Barnes's arrest warrants did not provide reasonable grounds to justify a stop of the red Cadillac with Texas plates. *See McClellan*, 34 So. 3d at 552; *Haddox*, 636 So. 2d at 1234.  Barnes's warrants also did not provide reasonable grounds to justify a stop of Eaddy beyond what was necessary for Officer Edwards to clarify his identity. *Haddox*, 636 So. 2d at 1234.

¶18.    Even if we consider the officers' observations with the informant's information, we still would conclude that they lacked reasonable suspicion to make an investigatory stop. The facts here differ from this Court's other cases involving informant tips. *See, e.g., McClellan*, 34 So. 3d at 552; *Burchfield*, 892 So. 2d at 194-95; *Williamson*, 876 So. 2d at 356.  Unlike the officers in *McClellan*, Officers Jefferson and Edwards acted, without independent investigation, on the caller's vague description of Barnes's vehicle. *McClellan*, 34 So. 3d at 552.  And, unlike the trial court in *Williamson*, the court made no findings regarding the reliability of the anonymous caller's information. *Williamson*, 876 So. 2d at

---

[3]The officers would not have known the description of Barnes's vehicle but for the caller's information, because the arrest warrants did not include a description.

8

356. Therefore, we hold that the trial court committed clear error in finding that Barnes's arrest warrants provided reasonable suspicion to stop and search Eaddy. *Dies*, 926 So. 2d at 917.

## II.     Good Faith

¶19.   We now address the State's contention that the officers, although mistaken, initiated the investigatory stop on a good-faith belief that Wendell Barnes, the owner of the red Cadillac, would be driving the vehicle.[4]  Citing *Cole v. State*, 8 So. 3d 250 (Miss. Ct. App. 2008), the State contends that "[t]he fact that Barnes turned out not to be in the car is therefore inconsequential . . . ."

¶20.   In *Cole v. State*, after the officer saw the defendant speeding, he called in the defendant's tag number to a dispatcher, who informed the officer that the tag had expired. *Id.* at 252.  Because the officer reasonably relied on the dispatcher's faulty information, the Court of Appeals determined his good-faith, mistaken belief did not invalidate his reasonable suspicion to stop the defendant for an expired tag.  *Id.* at 255.  Regardless, the officer's mistaken belief as to the tag had no effect on his reasonable suspicion to stop the defendant for speeding.  *Id.*

¶21.   While instructive, *Cole* does not set forth Mississippi's law on the good-faith exception, and the State's brief does not address this Court's precedent on that exception. In *White v. State*, we adopted the *Leon* good-faith exception to the exclusionary rule.  *White*

---

[4]While we assume in addressing the State's argument that Wendell Barnes owned the car, the record does not clearly indicate the car's owner.  Thandiwe Barnes picked up the car after Eaddy's arrest.  Eaddy testified that he did not know for sure who owned the car, but he thought it might belong to Thandiwe's brother.

*v. State*, 842 So. 2d 565, 570-53 (Miss. 2003) (invalidating telephonic search warrants but finding that the exclusionary rule should not apply to evidence seized pursuant to such warrants, because the officers thought the procedure was valid); *United States v. Leon*, 468 U.S. 897, 922-23, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). *See also* *Herring v. United States*, 555 U.S. 135, 129 S. Ct. 695, 708-09, 172 L. Ed. 2d 496 (2009) (holding that exclusionary rule did not apply where officer had arrested defendant on warrants that should have been recalled). But we intimated that this exception to exclusion should apply only in unique circumstances, such as where the officer's reliance on an invalidated search warrant was "objectively reasonable." *White*, 842 So. 2d at 577 (citation omitted). The Court further explained:

> [W]e admonish all law enforcement officers and prosecutors to understand that our adoption today of the *Leon* "good faith" exception should not be interpreted, in any way, as an opportunity for them to be less diligent or less thorough in following the mandates of the United States Constitution, the Mississippi Constitution, or case law interpretations thereof, regarding search and seizure.

*Id*. at 576.

¶22.    Under Mississippi Rule of Appellate Procedure 28, the Court has no duty to address the State's contentions on the good-faith exception. M.R.A.P. 28. Nevertheless, neither *Cole* nor the good-faith exception precludes the exclusionary rule. The State's reliance on *Cole* incorrectly assumes that Officer Jefferson personally knew the type of car that Wendell Barnes drove. Even if Officer Jefferson mistakenly had relied on the caller's description of the car, he repeatedly testified that he did not know Barnes's identity. Unlike the officer in

*Cole*, Officer Jefferson unreasonably continued to execute arrest warrants for an individual he did not know without verifying the suspect's identity.

¶23. Under the *White/Leon* good-faith exception, the relevant inquiry turns to whether the officers reasonably relied in good faith on an invalid search warrant. Assuming without deciding that the same principles extend to arrest warrants, the exception might have applied had the officers arrested Wendell Barnes. *See White*, 842 So. 2d at 577; *Herring*, 129 S. Ct. at 708-09. In other words, the exception applied in *White*, because the officers were mistaken as to the validity of the warrant and not the area to be searched. *See White*, 842 So. 2d at 577.

¶24. Moreover, *White* does not sanction the good-faith exception where the officer is mistaken about the suspect's general right to be free from unreasonable searches. *White*, 842 So. 2d at 576-77. Notably, Officer Jefferson testified at the motion hearing and at trial that stopping a car, without more, authorized the officer to search the occupant for officer safety. And his arrest report premised the protective search on the presence of a liquor bottle. Neither standard meets constitutional requirements. Finally, Officer Edwards testified that he had informed Officer Jefferson of the suspect's identity before the search. The misinterpretation of constitutional mandates, the contradictory information in the arrest report and testimony, and the failure to resolve the suspect's identity and act accordingly render the good-faith exception inapplicable.

¶25. Based on the above discussion, we decline to address either party's arguments regarding the protective-frisk, plain-view, or plain-feel exceptions. *See* M.R.A.P. 17. Because Wendell Barnes's arrest warrants and the caller's uninvestigated information failed

to create reasonable suspicion to justify an investigatory stop of Eaddy or the vehicle, the trial court's determination cannot withstand the substantial-evidence standard. *Dies*, 926 So. 2d at 920. Even if we find that the stop was justified at its inception, the officers exceeded the scope required to resolve the driver's identity. *Gonzales*, 963 So. 2d at 1141. Since the evidence against Eaddy is insufficient to sustain a conviction for possession with intent to distribute without admission of evidence of the illegally obtained cocaine, we reverse and render. *White v. State*, 735 So. 2d 221, 225 (Miss. 1999).

## CONCLUSION

¶26. In sum, Wendell Barnes's arrest warrants and the caller's information did not provide reasonable grounds to justify the investigatory stop and subsequent search and seizure of evidence from Eaddy. Further, the officers could not reasonably have relied in good faith on Barnes's arrest warrants to arrest Eaddy. Therefore, the trial court should have granted his motion to suppress. Because the evidence against Eaddy is insufficient to sustain a conviction for possession with intent to distribute without the admission of evidence of the illegally obtained cocaine, we reverse and render a judgment of acquittal. The appellant is therefore discharged.

¶27. **REVERSED AND RENDERED.**

**DICKINSON, P.J., KITCHENS, CHANDLER AND KING, JJ., CONCUR. PIERCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CARLSON, P.J., RANDOLPH AND LAMAR, JJ.**

**PIERCE, JUSTICE, DISSENTING:**

12

¶28. Because the trial court's findings were supported by substantial credible evidence, it did not err in denying Eaddy's motion to suppress. Accordingly, I would affirm Eaddy's conviction and sentence. Therefore, I respectfully dissent.

¶29. In deciding whether the trial court erred in denying Eaddy's motion to suppress, the Court "must determine whether the trial court's findings, considering the totality of the circumstances, are supported by substantial credible evidence."[5] The majority highlights inconsistencies between the evidence presented at the motion-to-suppress hearing and that which was presented at trial. But we should not look at the evidence presented at trial in deciding whether the trial court erred at the motion-to-suppress hearing, unless contrary evidence is presented at trial and the defendant moves to suppress in light of such evidence not previously considered by the court, and asks the court to reconsider the "totality of the circumstances."

*The investigatory stop*

¶30. At the hearing, the trial court was presented with the sworn testimony of Jefferson, the arresting officer, coupled with his report. Jefferson testified that, on the day of the arrest Edwards had received a personal phone call that Barnes was in town and "driving a red cadillac with Texas plates that had warrants on it." Jefferson further recounted that both he and Edwards had personal knowledge of Barnes's outstanding warrants, and that "we check warrants every day." He noted that he did not know Barnes, but that Edwards did. On cross-

---

[5] ***Delker v. State***, 50 So. 3d 300, 303 (Miss. 2010) (citing ***Moore v. State***, 933 So. 2d 910, 914 (Miss. 2006)).

examination, Jefferson stated that someone had called Edwards with the tip because "[t]hey knew we had warrants on him." Jefferson testified that he and Edwards had spotted a red Cadillac with a Texas license plate, and had pulled it over.

¶31. The defense did not call any witnesses at the hearing, nor did Eaddy testify. It did, however, argue that the stop was unlawful, and that Jefferson's testimony was at odds with his report. Jefferson's testimony was otherwise uncontested. The trial court found, based on the evidence presented at the hearing, that Jefferson's actions were justified.

¶32. A reasonable cause for an investigatory stop may be based on an officer's personal observation or on an informant's tip, if it bears indicia of reliability.[6] "Indicia" is defined as "circumstances which point to the existence of a given fact as probable, but not certain."[7] The fact that the caller knew that Barnes had outstanding warrants, and that the police were looking for him, demonstrates that the caller had a special familiarity with Barnes's affairs. Further, the caller described the vehicle Barnes would be driving as a "red cadillac [sic] with Texas plates." The color and make of the vehicle, coupled with the fact that the car had a "Texas plate" in the small town of Port Gibson, Mississippi, arguably set it apart from most, if not all, vehicles in that area. The officers' independent knowledge of Barnes's arrest warrants, together with the tip, exhibited sufficient indicia of reliability to justify an investigatory stop.

---

[6]*Burchfield v. State*, 892 So. 2d 191, 194-195 (Miss. 2004) (citing *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 118 (Miss. 1999)).

[7]*Black's Law Dictionary* 912 (Rev. 4th ed. 1968).

14

¶33.    The tips provided in *McClellan v. State*[8] and *Burchfield v. State*[9] were similar to the one provided here, with regard to the descriptions of the vehicles.  In *Burchfield*, the police were informed by a store clerk that two white males in a Cadillac with Arkansas plates had each purchased a quantity of pills containing pseudoephedrine and were leaving the parking lot, westbound on Goodman Road from Highway 51.[10]  In *McClellan*, the police received information that a man and woman had left a store in an older-model blue automobile, and that the vehicle was last seen traveling east on the Highway 82 bypass.[11]  Here, the caller informed Edwards that Wendell Barnes was in town and "driving a red cadillac with Texas plates that had warrants on it."  Edwards relayed this information to Jefferson.  Notably, both officers had personal knowledge concerning Barnes's warrants, and Edwards knew Barnes personally.  The officers in *McClellan* and *Burchfield* did not have any personal knowledge of the alleged criminal activity, and thus took an additional step to corroborate the information provided by the caller before pulling over the vehicle.  Indeed, the standard for reasonable suspicion requires as much when the officer lacks any personal knowledge about the alleged criminal activity.[12]  But where, as here, an officer has personal knowledge that an individual is wanted in connection with a felony and has been successfully evading arrest,

---

[8]*McClellan v. State*, 34 So. 3d 548, 552 (Miss. 2010).

[9]*Burchfield*, 892 So. 2d at194-95.

[10]*Id*. at 195.

[11]*McClellan*, 34 So. 3d at 550.

[12]*Burchfield*, 892 So. 2d at 194-195 (citing *Floyd*, 749 So. 2d at 110).

15

coupled with a tip saying as much and providing a detailed description of the car the individual is driving, the standard for reasonable suspicion has been met.[13] Thus, under the totality of the circumstances,[14] the officers had as much information as the officers in *McClellan* and *Burchfield*, and therefore had reasonable suspicion to make an investigatory stop.

*The protective frisk*

¶34. At the hearing, Jefferson testified that once he had stopped the vehicle, he asked the driver, whom he did not know, to step out. When the driver stepped out, Jefferson observed the "butt of a gun sitting out from under the driver side seat," and an empty whisky bottle. Jefferson also "could tell he had been drinking." At that point, Jefferson brought Eaddy to the rear of the car and patted him down for "safety reasons." During the frisk, Jefferson found two pill bottles in Eaddy's pockets that contained what appeared to be crack cocaine.

¶35. On cross-examination, Jefferson was asked about the discrepancies in his police report. He testified that he had misstated that he knew Barnes and the exact point in time at which he had seen the gun. In an effort to clarify his report, Jefferson stated that he did not know Barnes at the time of the stop, and that he had seen the "butt of a gun" under the driver's seat immediately after Eaddy had stepped out of the vehicle. The trial court found

---

[13]*See Gonzales*, 963 So. 2d at 1142 (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) ("[s]pecific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.").

[14]*See Wilson v. State*, 935 So. 2d 945, 950 (Miss. 2006).

that "the officer's report at the time of the stop and arrest . . . is not intended to be the total courtroom testimony of that officer."

¶36.    Legally, an officer may frisk a person for weapons, if the officer has reason to believe that he is dealing with an armed and dangerous individual.[15] This type of noncustodial stop is an exception to the Fourth Amendment's general proscription against warrantless searches, otherwise known as a *Terry* stop.[16]  Once Jefferson observed the "butt of a gun" under the driver's seat, saw the empty whiskey bottle, and smelled alcohol on Eaddy,  he had reason to perform a limited search for weapons. Thus, Jefferson's actions hardly can be deemed unreasonable.[17]

*The exclusionary rule and the good-faith exception*

¶37.    Even assuming, *arguendo*, that the stop violated Eaddy's Fourth Amendment rights, the facts of this case would not trigger the exclusionary rule.  There is no individual right to have improperly obtained evidence excluded, and the fact that a violation occurs does not render the exclusionary rule applicable, *per se*.[18]  Rather, the exclusionary rule applies only

---

[15]*Terry*, 392 U.S. at 27.

[16]*Gonzales v. State*, 963 So. 2d 1138, 1141 (Miss. 2007); *Terry*, 392 U.S. at 27.

[17] *See Gonzales*, 963 So. 2d at 1141-42; *Terry*, 392 U.S. at 27 (citations omitted) (where the Supreme Court noted "that it is imperative that the facts be judged against an objective standard: 'Would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?'").

[18]*See Herring v. U.S.*, 129 S. Ct. 695, 700, 500 U.S. 135, 172 L. Ed. 2d 496 (2009).

when the benefits of deterrence outweigh the social costs.[19]  And the rule need not apply in every case, such as the one here, where its application might provide only marginal deterrence.[20]

¶38.    Moreover, to trigger the rule, the officers' conduct must be "sufficiently deliberate that the exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."[21] Otherwise, "objectively reasonable" conduct falls within the good-faith exception to the exclusionary rule, adopted by this Court in *White v. State*.[22]

¶39.    At the hearing, Jefferson testified that he did not know what Barnes looked like, and justified his asking the driver of the vehicle to step out of the car based on the dark-tinted windows.  Jefferson testified that, after the driver had stepped out of the car, he noticed the "butt of gun" under the driver's seat, saw an empty liquor bottle and smelled alcohol on Eaddy.  These observations prompted Jefferson to frisk the driver for dangerous weapons, prior to investigating the driver's identity.  Nowhere in our caselaw are officers required to confirm a person's identity before frisking them, once an officer has seen what appears to be

---

[19]*Id*.

[20]*Id*.

[21]*Id*. at 702.

[22]*White v. State*, 842 So. 2d 565, 570-571 (Miss. 2003) (invalidating telephonic search warrants but finding that the exclusionary rule should not apply to evidence seized pursuant to such warrants because the officers thought the procedure was valid).  Notably, this Court has applied the *White/Leon* good-faith exception only to circumstances involving the validity of a warrant.

a weapon and believes that individual to be armed and dangerous.[23] Thus, any notion that Jefferson acted unreasonably and exceeded the scope required to resolve the driver's identity, given the facts, is shocking, and turns a blind eye to an officer's dilemma when enforcing our laws to take reasonable steps for his or her own safety. Because Eaddy failed to present any evidence sufficient to trigger the rule that the officers' conduct was deliberate, reckless, or grossly negligent, and because the officers reasonably relied on the information they received from the caller, as well as their own personal knowledge, and believed in good faith that Barnes would be driving the car, I would extend the *White/Leon* good-faith exception to include cases such as this one.

### CONCLUSION

¶40. In sum, Eaddy presented no evidence contesting Jefferson's testimony at the hearing, leaving the trial court with Jefferson's testimony and report upon which to base its decision. I cannot agree with the conclusion that the trial court erred in denying Eaddy's motion to suppress. Accordingly, I would affirm Eaddy's conviction and sentence.

**CARLSON, P.J., RANDOLPH AND LAMAR, JJ., JOIN THIS OPINION.**

---

[23]See *Terry*, 392 U.S. 1, 27.