ROBERTS, J.,
for the Court:
¶ 1. Eric Bondegard appeals his conviction in the Amite County Circuit Court of misdemeanor driving under the influence of intoxicating liquor, first offense. He claims his arrest was illegal because the arresting officer lacked probable cause to arrest him. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. At approximately 10:30 p.m. on October 14, 2009, Trooper Jason Powell of the Mississippi Highway Patrol went inside the Exxon Truck Stop, also known as the C-Store, in Liberty, Mississippi, to buy *1183 a soft drink. While standing at the counter, Trooper Powell saw a dark blue Toyota Tacoma pickup truck pull up to the gas pumps. The driver of the pickup truck was later identified as Bondegard.[1] Bondegard went inside the C-Store and got a twelve-pack of beer. When Bonde-gard went to the counter, Trooper Powell smelled alcohol on Bondegard.[2] Additionally, Bondegard’s face was flushed.
¶ 3. Bondegard put the beer on the counter and asked the store clerk for some cigarettes. At that time, Bondegard first noticed Trooper Powell. Trooper Powell testified that Bondegard’s demeanor “completely changed” after they had made eye contact. Bondegard became “extremely nervous and fidgety.” By Trooper Powell’s description, Bondegard was literally shaking.[3] According to Trooper Powell, Bondegard became so nervous that he had a hard time getting his credit card out of his wallet. When Bondegard finally managed to remove his credit card from his wallet, he had trouble swiping his credit card on the C-Store’s electronic-payment equipment. Trooper Powell explained that the store clerk had to swipe Bondegard’s credit card for him.
¶ 4. Bondegard continued to behave in a nervous mariner. He left the C-Store without taking his beer or cigarettes. After calling someone on his cellular phone, Bondegard went back inside the C-Store. He then went back outside and made another phone call. Again, he went back inside the C-Store. When he went back inside, he bought a hot dog. Again, he left his items on the counter and went back outside, where he made a third phone call.
¶ 5. Bondegard had been visiting Danny Schneckloth, a fellow employee of the Canadian National Railroad. Schneckloth drove a small, silver car into the C-Store parking lot. Bondegard went back inside the C-Store, retrieved his items from the counter, and got into the passenger side of Schneckloth’s car. Bondegard left his pickup truck parked at the gas pumps. Schneckloth later testified that Bondegard had called him and said that his pickup truck would not start. Schneckloth also testified that Bondegard had not mentioned Trooper Powell’s presence during their conversations.
¶ 6. After Schneckloth picked up Bonde-gard, Trooper Powell left the C-Store. As Trooper Powell was leaving the city limits of Liberty, he encountered someone who was speeding. He stopped that driver in the parking lot of a store next to the C-Store. Shortly after Trooper Powell concluded that traffic stop, Trooper Powell saw the same small, silver car in which Bondegard had left. Approximately fifteen minutes passed since Trooper Powell had first seen Bondegard. The small, silver car returned to the C-Store, where Bondegard got out. Bondegard went to his pickup truck and got inside. Contrary to what Bondegard had told Schneckloth, Bondegard was able to start his pickup truck immediately.
*1184 ¶ 7. Bondegard then drove away. However, when Bondegard attempted to leave the C-Store parking lot, Bondegard missed the entrance. Bondegard drove into a ditch so violently that his front tires left the surface of the road. His back tires left the surface of the road when Bonde-gard drove out of the ditch.
¶ 8. Trooper Powell pursued Bondegard. By the time Trooper Powell got to the last place that he saw Bondegard’s pickup truck, he could not find Bondegard. Trooper Powell correctly deduced that Bondegard had pulled into a driveway. He found Bondegard’s pickup truck parked in Schneckloth’s driveway. Trooper Powell also found Bondegard standing near the edge of the street while talking on his cellular phone. Although Trooper Powell had not activated his blue lights, when Bondegard saw Trooper Powell’s patrol car, Bondegard turned and ran toward Schneckloth’s house. Trooper Powell got out of his patrol car and told Bondegard to stop running and come to him. Instead, Bondegard continued inside Schneckloth’s house.
¶ 9. Trooper Powell followed Bondegard. When Trooper Powell saw Bondegard in Schneckloth’s house through a partially opened door, Trooper Powell told Bonde-gard to come outside. Bondegard came to the door and told Trooper Powell that he was home and he was not leaving. Trooper Powell attempted to grab Bondegard’s wrist, but Bondegard jerked it away from Trooper Powell. Trooper Powell then grabbed Bondegard, pinned Bondegard’s arm behind his back, and placed Bonde-gard in handcuffs. Trooper Powell later testified that he again smelled alcohol on Bondegard’s person.[4]
¶ 10. While Bondegard was in Trooper Powell’s patrol car, Bondegard refused to submit to a portable Breathalyzer test. Trooper Powell drove Bondegard to the Amite County Jail, where Bondegard again refused to submit to a breath test. While Bondegard was at the county jail, Trooper Powell again smelled a “strong odor” of alcohol on Bondegard’s person. Trooper Powell also observed that: Bondegard had “blood shot red eyes”; Bondegard was extremely nervous; and Bondegard’s speech was impaired. Accordingly, Trooper Powell charged Bonde-gard with DUI. Trooper Powell also charged Bondegard with resisting arrest, failure to comply with the lawful order of a law-enforcement officer, careless driving, and possession of an improper driver’s license.
¶ 11. Bondegard was convicted of DUI, first offense, after a trial before the Amite County Justice Court. Bondegard appealed the matter to the circuit court for a de novo trial pursuant to Rule 12.02 of the Uniform Rules of Circuit and County Court. During the bench trial, the circuit court granted Bondegard’s motion for a directed verdict regarding all charges but the DUI charge. The circuit court found Bondegard guilty of DUI, first offense, and sentenced Bondegard to forty-eight hours in the Amite County Jail. However, the circuit court further held that Bonde-gard’s sentence would be suspended upon the payment of a $1,000 fine. The circuit court further ordered Bondegard to complete a drug and alcohol safety education program and placed Bondegard on three years of non-reporting misdemeanor probation. Bondegard appeals and claims the circuit court erred when it declined to *1185 conclude that Trooper Powell had no probable cause to arrest him.
STANDARD OF REVIEW
¶ 12. We apply a “mixed” standard of review to this issue. Eaddy v. State, 63 So.3d 1209, 1212 (¶ 11) (Miss.2011). The existence of probable cause or reasonable suspicion is to be reviewed de novo. Id. “However, this Court is restricted to a de novo review of the trial judge’s decision based on historical facts reviewed under the substantial evidence and clearly erroneous standards.” Id.
ANALYSIS
¶ 13. Bondegard raises a multifaceted argument with a central premise that Trooper Powell did not have probable cause to arrest him. First, Bondegard claims that Trooper Powell’s arrest was illegal because there was no evidence that he was “operating” his pickup truck on a public road as set forth in Mississippi Code Annotated section 63-11-30(1) (Rev.2004). But Bondegard did not raise this issue at trial. “Failure to raise an issue in a trial court causes operation of a procedural bar on appeal.” Birrages v. Ill. Cent. R.R. Co., 950 So.2d 188, 194 (¶ 18) (Miss.Ct.App.2006). Consequently, this issue is procedurally barred.
¶ 14. Second, Bondegard claims that Trooper Powell did not arrest him when the “time was ripe.” That is, Bonde-gard argues Trooper Powell might have had probable cause to arrest him when Trooper Powell smelled alcohol on him during their first encounter at the C-Store. Bondegard further argues Trooper Powell might have even had probable cause to arrest him after Bondegard drove erratically while leaving the C-Store parking lot. However, Bondegard concludes that Trooper Powell lacked probable cause to arrest him at Schneckloth’s house because Trooper Powell had “let [him] go free.”
¶ 15. Bondegard also argues Trooper Powell arrested him on a hunch, rather than reasonable suspicion that Bondegard was driving under the influence of alcohol. Bondegard appears to argue Trooper Powell stopped Bondegard as a “fishing expedition” to try to determine whether Bonde-gard actually committed a crime. In so doing, Bondegard recites certain facts in a favorable manner, while declining to mention other facts. That is, Bondegard bases his argument solely on those events that happened before Schneckloth drove him back to the C-Store so Bondegard could retrieve his pickup truck. Bondegard’s selective recitation of the facts involves complete omission of everything that happened after Schneckloth drove Bondegard back to the C-Store. It was only then that Trooper Powell saw Bondegard drive erratically by missing the entrance to the C-Store parking lot and driving through a ditch so violently that his tires left the surface of the road.
¶ 16. The Fourth Amendment to the United States Constitution and Article 3, Section 23 of the Mississippi Constitution provide that an individual has the right to be free from unreasonable searches and seizures. Dies v. State, 926 So.2d 910, 917-18 (¶ 21) (Miss.2006). “The existence of ‘probable cause’ or ‘reasonable grounds’ justifying an arrest without a warrant is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The determination depends upon the particular evidence and circumstances of the individual case.” Jones v. State, 993 So.2d 386, 392 (¶ 10) (Miss.Ct.App.2008). Stated differently:
A warrantless arrest is lawful if “at the moment the arrest was made, the offi *1186 cers had probable cause to make it — [if] at that moment the facts and circumstances within their knowledge and of which they had reasonably trastworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.”
United States v. Johnson, 445 F.3d 793, 796 (5th Cir.2006) (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)).
¶ 17. Trooper Powell testified that he smelled alcohol on Bondegard’s person when they first encountered each other at the C-Store. Trooper Powell testified that Bondegard became very nervous when he saw Trooper Powell. Bondegard fumbled with his credit card. He bought beer, cigarettes, and a hot dog; he then left them on the counter while he went outside to make phone calls. But Trooper Powell testified that he did not think he had probable cause to arrest Bondegard at that time. Our analysis does not address whether Trooper Powell had probable cause to arrest Bondegard for driving under the influence of alcohol at that time. Contrary to Bondegard’s self-serving recitation of the facts, the story does not end there. In addition to smelling alcohol on Bondegard’s person and seeing Bondegard act as though Trooper Powell’s presence made him very nervous, Trooper Powell also saw Bondegard drive erratically.
¶ 18. Approximately fifteen minutes after Schneckloth had picked up Bondegard at the C-Store, Schneckloth drove Bonde-gard back to the C-Store. Trooper Powell watched as Bondegard got into his pickup truck and left the C-Store parking lot. Bondegard missed the parking lot entrance and drove into a ditch. Bondegard drove into the ditch so violently that his tires left the surface of the road. Trooper Powell clearly articulated facts that would cause a reasonably prudent person to believe that Bondegard was driving under the influence of alcohol. Under the precise circumstances of this case, just because Trooper Powell did not arrest Bondegard after their first encounter does not mean that Trooper Powell forfeited the right to arrest Bondegard for additional events that occurred fifteen minutes later. Furthermore, Trooper Powell did not lose probable cause to arrest Bondegard simply because Trooper Powell had to find him. If that were true, an offender could escape prosecution simply by leaving a law-enforcement officer’s sight. Because Trooper Powell had probable cause to arrest Bondegard for driving under the influence of alcohol, this issue has no merit.
¶ 19. THE JUDGMENT OF THE AM-ITE COUNTY CIRCUIT COURT OF CONVICTION OF DRIVING UNDER THE INFLUENCE OF INTOXICATING LIQUOR, FIRST OFFENSE, AND SENTENCE OF FORTY-EIGHT HOURS IN THE AMITE COUNTY JAIL, SUSPENDED UPON PAYMENT OF A $1,000 FINE, COMPLETION OF AN ALCOHOL SAFETY PROGRAM, AND THREE YEARS OF NON-REPORTING PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.

. Bondegard is a train engineer with the Canadian National Railroad. Although he is a native of Nebraska, Bondegard had been living in Amite County because of his job.

. Bondegard later testified that he had drank two beers before he went to the C-Store to purchase more beer. However, in his brief, Bondegard concedes that he was "in an obviously intoxicated condition” at the C-Store.

.Bondegard testified that he was "really nervous" because: he drank two beers before arriving at the C-Store; he was buying more beer; and he thought Trooper Powell would arrest him as soon as he got into his pickup truck.

. While Bondegard was in Trooper Powell's patrol car, Bondegard told Trooper Powell that “he had been drinking” at Schneckloth's house and "everywhere.” At trial, Bonde-gard testified that he had several shots of liquor and a couple of beers after he returned to Schneckloth’s house.