WALLER, Chief Justice,
specially concurring:
¶ 16. I fully agree with the majority opinion and write separately to address the underlying Fourth Amendment issue presented by this case, which S.S. raises in his petition for certiorari. That issue is whether S.S. was seized within the meaning of the Fourth Amendment when Officer Kent approached him with his weapon unholstered. I would find S.S. was never seized because he never actually submitted to Officer Kent’s show of force. See Brendlin v. California, 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). Furthermore, Officer Kent’s actions were reasonable under the circumstances, and when he approached S.S., he had reason to believe S.S. might have information about a possible crime. Therefore, S.S.’s Fourth Amendment rights were not violated.
¶ 17. It should first be noted that whenever an individual’s Fourth Amendment rights are at stake, the issue of probable cause or reasonable suspicion is reviewed de novo. Eaddy v. State, 63 So.3d 1209, 1212 (Miss.2011) (quoting Dies v. State, 926 So.2d 910, 917 (Miss.2006)). This standard of review applies to all Fourth Amendment issues, including those raised in youth court. See In Interest of M.I., 519 So.2d 433, 436 (Miss.1988) (stating “neither the Fourteenth Amendment nor the Bill of Rights is for adults only” (citing In Re Gault, 387 U.S. 1, 13, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527 (1967))).
¶ 18. The Fourth Amendment of the United States Constitution and Article 3, *752 Section 28 of the Mississippi Constitution protect individuals from unreasonable searches and seizures. U.S. Const, amend. IV; Miss. Const, art. 8, § 23 (1890). This Court employs a two-part analysis to determine if a search or seizure is reasonable. Eaddy v. State, 63 So.3d 1209, 1212-13 (Miss.2011). The Court must determine “(1) whether the officer’s action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place.” Gonzales v. State, 963 So.2d 1138, 1142 (Miss.2007).
¶ 19. A police officer may approach an individual during the course of an investigation into possible 'criminal activity without the interaction rising to the level of a seizure requiring probable cause. Floyd v. City of Crystal Springs, 749 So.2d 110, 114 (Miss.1999). A police officer may even detain the person to conduct an investigatory stop when the officer has “reasonable suspicion, grounded in specific and articu-lable facts ...” that the person is connected with criminal activity. Eaddy v. State, 63 So.3d 1209, 1213 (Miss.2011); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). That is, a police officer does not need probable cause to approach an individual while investigating criminal activity. See Terry, 392 U.S. 1, 88 S.Ct. 1868. In fact, “[cjonsideration of the constitutionality of seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.” Floyd v. City of Crystal Springs, 749 So.2d 110, 117 (Miss.1999) (quoting Brown v. Texas, 443 U.S. 47, 50-51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979)); see also Singletary v. State, 318 So.2d 873, 876 (Miss.1975). When an officer has reason to believe that an individual may be armed and possibly may pose a danger to the officer and others, the officer is justified in taking the measures necessary to safeguard himself and the public. Terry, 392 U.S. at 24, 88 S.Ct. 1868. This includes a limited detention of an individual and a pat-down search of the outer clothing to ensure an individual is not armed. Id. Furthermore, the determination of probable cause for an arrest is a practical matter, based upon “conventional considerations of everyday life” and not legal technicalities. Strode v. State, 231 So.2d 779, 782 (Miss.1970).
¶ 20. The investigation of gunshots fired from a vehicle presents a dangerous and precarious situation. Police officers responding to such crimes must not only investigate the crime but must also take reasonable measures to safeguard themselves and others. Terry, 392 U.S. at 24, 88 S.Ct. 1868. As such, in the current case, we must first look at whether Officer Kent acted reasonably in having his weapons drawn. See id. And second, we must decide whether, under these circumstances, Officer Kent violated S.S.’s Fourth Amendment rights when he approached S.S. with his weapon drawn. See Floyd, 749 So.2d at 117.
¶ 21. Officer Kent arrived at the duplex shortly after the report of shots fired. Officer Kent found the tan Cutlass in front of the duplex with S.S. and others standing nearby. A significant crowd also had gathered in front of the duplex, adding complexity to this possibly deadly situation. Given the potential for harm to Officer Kent and members of the nearby crowd presented by a possible shooter at the duplex and the need to investigate the shooting, Officer Kent acted reasonably in having his weapon drawn when he exited his vehicle. See Singletary v. State, 318 So.2d 873, 877 (Miss.1975) (providing that, while making a reasonable investigatory stop, police officers have the right to pro *753 tect themselves from attack by a hostile suspect).
¶ 22. Furthermore, Officer Kent did not violate S.S.’s Fourth Amendment rights by approaching him as part of his investigation. First, S.S. was never seized within the meaning of the Fourth Amendment because he was neither under physical control of Officer Kent, nor did he submit to Officer Kent’s show of authority. California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). In Hodari D., the United States Supreme Court addressed whether a seizure occurred where an officer made a “show of authority,” but the person refused to submit to that authority or to obey the officer’s commands. Id. The Supreme Court found that such a person is not “seized” for purposes of the Fourth Amendment, providing “the Fourth Amendment ... does not remotely apply ... to the prospect of a policeman yelling ‘Stop, in the name of the law!’ at a fleeing form that continues to flee. That is no seizure.” Id.; see also Brendlin v. California, 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) (“A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned.”).
¶23. Officer Kent, in responding to a report of shots fired from a tan Cutlass in that neighborhood, had the authority to investigate and to speak with individuals standing near the tan Cutlass, including S.S.See Floyd, 749 So.2d at 115. The fact that Officer Kent’s pistol was unhol-stered as he spoke to S.S. does not alone constitute a seizure. In United States v. Mendenhall, the U.S. Supreme Court found that a person is seized for purposes of the Fourth Amendment under circumstances in which a reasonable person would not feel free to leave. United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). In the current case, when Officer Kent approached S.S. and his brother D.S., Officer Kent had his weapon pointed at D.S. Officer Kent, rightly concerned about his safety and the safety of the nearby crowd, instructed both S.S. and D.S. to show him their hands. Only after S.S. refused to show Officer Kent his hands or to put his hands on the car, did Officer Kent seize S.S.All prior show of force had been directed at D.S.; therefore S.S. cannot argue he was seized at that point under the Fourth Amendment. To find otherwise would mean that every person in the yard at that moment who saw and heard Officer Kent was seized under the Fourth Amendment.
¶ 24. Additionally, S.S. was not unlawfully detained at any time prior to his refusal to obey Officer Kent’s orders. Officer Kent, as part of his investigation, was free to question S.S. because Officer Kent had reason to believe S.S. may have had information about or been involved in the shooting. See Eaddy, 63 So.3d at 1213. While Officer Kent testified that he believed D.S., and not S.S., was involved in the shooting, the facts that the shots recently had been fired in the area and reportedly from a vehicle matching the description of the car S.S. was standing beside, could cause a reasonable officer under the circumstances to conclude that S.S.may have had information regarding the shooting. Therefore, Officer Kent was justified in approaching S.S., and due to the threat posed by a potential armed gunman -in the area, Officer Kent acted reasonably in having his weapon unhol-stered as he approached S.S.
¶25. Because Officer Kent acted reasonably in having his weapon drawn, and because he had reason to believe S.S. *754 might have information about a possible crime, Officer Kent did not violate S.S.’s Fourth Amendment rights when he initially approached him. Nor was S.S. ever seized prior to Officer Kent observing S.S.’s disorderly conduct, because S.S. never submitted to Officer Kent’s show of force. Therefore, I fully agree with the majority opinion in affirming the judgments of the Court of Appeals and the Union County Youth Court.
RANDOLPH, P.J., AND PIERCE, J., JOIN THIS OPINION. LAMAR AND COLEMAN, JJ., JOIN THIS OPINION IN PART.