# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-KA-00479-SCT

*AMONDO STEWART a/k/a AMONDO*
*DECHARLES STEWART*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/22/2022 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| TRIAL COURT ATTORNEYS: | MATTHEW DAVIS SHOEMAKER |
| | ALEXANDER IGNATIEV |
| | LAURA KE'YUANA COOPER |
| | JAMES LEWIS LANE, JR. |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | MARY CLIFT ABDALLA |
| | SONYA CHEN DICKSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON HORNE |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/06/2023 |
| MOTION FOR REHEARING FILED: | |

## BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.

## CHAMBERLIN, JUSTICE, FOR THE COURT:

¶1. Amondo Stewart was convicted of "possession of methamphetamine, a schedule II

controlled substance" pursuant to Mississippi Code Section 41-29-139(c)(1)(C) (Rev. 2018).

On appeal, Stewart argues that error occurred at trial due to the admission of evidence that

was obtained in violation of his Fourth Amendment[1] and *Miranda*[2] rights. Stewart, however, failed to raise these arguments in the trial court and is now barred from bringing them on appeal. Although, under the doctrine of plain error, this Court may evaluate whether a defendant's substantive or fundamental rights have been affected, Stewart failed to ask this Court for such consideration until his reply brief, after which the State had already raised a waiver argument. This Court finds that although his arguments are barred, no error plainly appears in the sparse record. Stewart's conviction and sentence are affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2. In the early morning hours of November 19, 2019, three Forrest County police officers were investigating a missing person case near Eagle Drive in Hattiesburg, Mississippi. The officers had determined that the missing person had been seen with Stewart, who went by the name Detroit and who was living in a tent in a wooded area near Eagle Drive. The officers parked close to the area, approached the tent, knocked on the tent, announced themselves as the Forrest County Sheriff's Department and asked the people in the tent to step out. Stewart and the missing person exited the tent. The officers asked if Stewart and the missing person would come out of the woods and into the parking lot to talk. Stewart and the missing person agreed to go with the officers. Investigator Rafael Bailey and Forrest County Deputy Daniel Benoit began talking with the missing person, while Officer Nate Robertson talked with

_____

[1]U.S. Const. amend. IV.

[2]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Stewart.

¶3.     During the course of the conversation, Robertson realized that his discussion with Stewart involving the missing person case needed to be either audibly or visually recorded, and he asked if Stewart would accompany him to the police station. Stewart, who had no car, agreed to go with Robertson. Knowing that Stewart would likely be placed in a holding cell, Robertson then asked Stewart if he had anything illegal on him because he would be subject to criminal charges if he brought contraband into the jail. Stewart admitted he had methamphetamine in his underwear. Stewart pulled open his pants to allow Robertson to see "a clear plastic baggy tucked away underneath his genitalia." Robertson retrieved a pair of gloves and removed the bag, which he observed contained a "whitish crystalline substance which is consistent to methamphetamine." At this point, Robertson placed Stewart in custody.

¶4.     Stewart was convicted of possession of methamphetamine pursuant to Section 41-29-139(c)(1)(C). The only testimony heard by the jury at trial was Robertson's version of the events and the testimony of Keith McMahan, an expert in chemical analysis of narcotics. McMahan testified that he had examined the contents of the baggy and determined that the substance removed from Stewart was 4.835 grams of methamphetamine.

¶5.     On April 22, 2022, Stewart was sentenced to serve five years in the Mississippi Department of Corrections and was ordered to complete a long-term alcohol and drug rehabilitation program. On May 4, 2022, Stewart moved for a judgment notwithstanding the

verdict or, in the alternative, a new trial. His motion was denied.

## ISSUE PRESENTED

¶6. Stewart argues that the trial court erred by admitting evidence seized and admissions made in violation of his constitutional rights.

## ANALYSIS

¶7. The Fourth Amendment of the United States Constitution and article 3, section 23, of the Mississippi Constitution provide protection from unlawful searches and seizures. U.S. Const. amend. IV; Miss. Const. art. 3, § 23. "As a general rule, the state and federal constitutions prohibit warrantless searches unless an exception applies." *Cole v. State*, 242 So. 3d 31, 38 (Miss. 2018) (internal quotation marks omitted) (quoting *Eaddy v. State*, 63 So. 3d 1209, 1213 (Miss. 2011)). "Of interest in this case is the warrant exception for non-custodial investigatory stops[.]" *Gonzales v. State*, 963 So. 2d 1138, 1141 (Miss. 2007); *see Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). In an investigatory stop, an officer may "stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest[.]" *Singletary v. State*, 318 So. 2d 873, 876 (Miss. 1975); *see Illinois v. Wardlow*, 528 U.S. 119, 125, 120 S. Ct. 673, 677, 145 L. Ed. 2d 570 (2000) (recognizing that police officers may detain individuals to resolve ambiguities (citing *Terry*, 392 U.S. at 30)).

¶8. Stewart claims that the methamphetamine was obtained without consent by an illegal search that violated his Fourth Amendment rights. In addition, Stewart argues that he was

4

subject to custodial interrogation without being given his *Miranda* warnings.

¶9.     Stewart, however, challenges these issues for the first time on appeal.  Stewart did not file a motion to suppress the evidence, he made no objections to the introduction of the evidence at trial and he did not challenge the inclusion of the evidence in his post-trial motion.  Thus, Stewart is procedurally barred from challenging these issues. ***Shinstock v. State***, 220 So. 3d 967, 970 (Miss. 2017) ("'The rule that failure to object' at trial bars raising the issue on appeal 'applies to Fourth Amendment claims as well.'" (quoting ***Walker v. State***, 913 So. 2d 198, 224 (Miss. 2005))).  Additionally, Stewart failed to ask this Court to consider a plain error analysis until his reply brief, after the State had already pointed out this issue and argued waiver.

¶10.     "'Under the plain-error doctrine' this Court 'can recognize obvious error which was not properly raised by the defendant and which affects a defendant's "fundamental, substantive right."'" ***Shinstock***, 220 So. 3d at 970 (quoting ***Conners v. State***, 92 So. 3d 676, 682 (Miss. 2012)).  "Applying the plain-error rule, the Court must determine (1) whether the trial court deviated from a legal rule; (2) whether the error is plain, clear, or obvious; and (3) whether the error prejudiced the outcome of the trial." ***Willie v. State***, 204 So. 3d 1268, 1279 (Miss. 2016) (citing ***Foster v. State***, 148 So. 3d 1012, 1018 (Miss. 2014)).  Reversal is warranted if there is error that resulted in a "manifest miscarriage of justice[.]" ***Williams v. State***, 134 So. 3d 732, 736 (Miss. 2014) (citing ***Gray v. State***, 549 So. 2d 1316, 1321 (Miss. 1989)).

¶11. This Court finds no obvious errors. The record is undeveloped on these issues because Stewart made no objections or challenges to the evidence. There is hardly any evidence to assist this Court in the fact-intensive analysis that is required for appellate review of Stewart's claims. Because this Court will not speculate as to what occurred that morning on Eagle Drive, this Court finds that Stewart's arguments are procedurally barred. *See Shinstock*, 220 So. 3d at 971. Nevertheless, they are without merit. Stewart relies on the uncontradicted testimony of Robertson, which this Court has no reason to doubt and which does not plainly reveal that Stewart's fundamental, substantive rights were violated.

¶12. Stewart states that he does not challenge the investigatory stop but argues that the methamphetamine was gained by an illegal search of his person and was beyond the scope of the initial stop. *See Eaddy*, 63 So. 3d at 1214 ("The scope of a search or seizure must relate to the initial circumstances that called for police action" or the officer must have probable cause to exceed the scope of the stop (citing *Haddox v. State*, 636 So. 2d 1229, 1234 (Miss. 1994); *Floyd v. State*, 500 So. 2d 989, 992 (Miss. 1986))); *Terry*, 392 U.S. at 23-25. Robertson testified that he realized his conversation with Stewart should be recorded and asked Stewart if he would come to the station for an interview. Stewart agreed. Robertson further testified that he offered Stewart a "courtesy ride" to the jail, since Stewart did not have a car. Robertson expressed that he typically asks if a person has anything illegal on them before taking them to the station or the jail because they can be criminally charged for bringing contraband into the jail. Stewart, in response to Robertson's question,

voluntarily admitted and revealed the illegal substance on his person.

¶13. It was permissible for Robertson to briefly detain Stewart in an attempt to resolve the ambiguities surrounding the discovery of the missing person in Stewart's tent. *Singletary*, 318 So. 2d at 876. Additionally, this Court has found that once a suspect voluntarily reveals the object the reasonable expectation of privacy under the Fourth Amendment ends. *Gales v. State*, 153 So. 3d 632, 639 (Miss. 2014) (quoting *Katz v. United States*, 389 U.S. 347, 359 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)). No obvious violation of Stewart's Fourth Amendment rights occurred.

¶14. Stewart also argues that the State failed to prove that he voluntarily consented to the search. Again, Robertson characterized Stewart as being very cooperative, and when asked if he had anything illegal on him, Stewart showed Robertson the drugs in his underwear. There is no evidence that Stewart objected or refused to allow Robertson to confiscate the baggy. This Court has stated that "[i]f the consent is preceded by cooperation in the investigation generally, this enhances the chances that the consent was voluntary." *Jones v. State ex rel. Miss. Dep't of Pub. Safety*, 607 So. 2d 23, 27 (Miss. 1991). No plain error is apparent from these facts.

¶15. Stewart further argues that, based on the totality of the circumstances, he did not feel that he was free to leave and was subjected to custodial interrogation in violation of his *Miranda* rights. *Miranda* rights attach when a suspect is subjected to custodial interrogation, i.e., in custody and undergoing interrogation. *Wilson v. State*, 936 So. 2d 357, 362 (Miss.

7

2006). Interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Benjamin v. State*, 116 So. 3d 115, 122 (Miss. 2013) (internal quotation marks omitted) (quoting *Rhode Island v. Innis*, 446 U.S. 290, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (2013))).

¶16.    Again, this Court's understanding of the circumstances is based entirely on the testimony of Robertson, who testified that Stewart, who was being very cooperative, was not in custody, was free to leave and could have refused to answer his questions. It was not until Stewart showed Robertson the baggy that Robertson placed Stewart in custody. There is no other evidence to cast any doubt that Robertson's recounting of the incident is entirely accurate. Although Robertson's question, unknown to Robertson, was likely to elicit an incriminating response, Stewart was not subject to custodial interrogation because he was not in custody. Additionally, this Court has stated that "[i]n a non-custodial setting where interrogation is investigatory in nature (general on-the-scene-investigation), *Miranda* warnings are not required in order that a defendant's statements be admissible." *Porter v. State*, 616 So. 2d 899, 907 (Miss. 1993) (quoting *Nathan v. State*, 552 So. 2d 99, 103 (Miss. 1989)). Thus, Stewart's *Miranda* rights had not yet attached and could not have been violated.

## CONCLUSION

¶17.    "The burden of showing that the error was committed, and is not mere speculation,

is on the appellant." ***Shinstock***, 220 So. 3d at 971 (internal quotation marks omitted) (quoting ***Sykes v. United States***, 373 F.2d 607, 612-13 (5th Cir. 1966)). Stewart offers only mere speculation for this Court to rely upon. There is no evidence in the record that plainly shows that Stewart's constitutional rights were violated. Although Stewart waived the right to challenge these issues by failing to raise them in the trial court, this Court nevertheless finds that they are without merit. Stewart's conviction and sentence are affirmed.

¶18.    **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR.**