LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. On January 8, 2009, John Reynolds was convicted in the Water Valley Municipal Court of driving under the influence (DUI), first offense, and ordered to pay a $1,000 fine and court costs. Reynolds appealed to the Yalobusha County Circuit Court for a de novo trial. At his bench trial, Reynolds was again found guilty and ordered to pay a $1,000 fine, court costs, complete Mississippi Alcohol and Safety Education Program (MASEP) classes, and serve forty-eight hours in jail. The jail time was suspended. Reynolds filed a motion to correct the circuit court’s judgment, a motion for a judgment notwithstanding the verdict (JNOV), and a motion for a new trial. The circuit court denied all of Reynolds’s post-trial motions.
¶ 2. Feeling aggrieved, Reynolds now appeals and raises the following two issues: (1) the circuit court erred in convicting him of DUI, first offense refused test, and (2) the circuit court erred in denying his ore tenus motion to dismiss for lack of probable cause. Finding error, we reverse and render.
FACTS
¶ 3. On the morning of September 6, 2008, at 4:30 a.m., Water Valley Police Officer Christopher Blair was on routine patrol in Water Valley, Mississippi. Officer Blair was stopped at a red light at the intersection of Central Street and North Court Street. While waiting for the light to change, Officer Blair noticed a car stop approximately six-car lengths behind him. When the light changed, both cars proceeded southbound on Central Street. Officer Blair then turned left into a parking lot to perform a security check on the Dollar General business, but he noticed the car continued straight on Central Street. Officer Blair noted the car was a silver Chevrolet Corvette, which he stated was a “very unique car[.]”
¶ 4. After checking the doors, windows, and back of the Dollar General, Officer Blair turned north onto Railroad Street and saw the Corvette driving east on North Court Street. When the Corvette passed him at the intersection of Railroad Street and North Court Street, he noted the car was traveling below the speed limit of twenty-five miles per hour. He also saw that two males were in the Corvette and that the passenger was drinking from a white cup. The passenger pointed at Officer Blair when they drove by his car. Once the passenger pointed to the officer, the Corvette slowed from less than twenty-five miles per hour to approximately five to eight miles per hour. Officer Blair began to follow closely behind the Corvette for a “good little distance” and proceeded to call in the license plate number to dispatch. Dispatch informed Officer Blair that the car belonged to Reynolds and that there were “negative 29s, which means it’s not wanted or stolen out of anywhere.” From there, the two cars continued east on North Court Street to Goode Street. Goode Street is a public street that generally runs north and south. To the south, it runs through the elementary school’s campus. The Corvette turned right (south) onto Goode Street toward the elementary school; Officer Blair turned left (north) which runs into Jones Street.
¶ 5. Officer Blair traveled approximately 150 feet north on Goode Street when he made the decision to turn around and initiate a traffic stop with the Corvette because he believed it suspicious that the Corvette would be going toward the school at 4:30 a.m. The Corvette had turned around in the elementary school’s parking lot and was driving north on Goode Street when the two cars passed each other near *599 the elementary school. After passing each other, Officer Blair turned around, turned on his blue lights, and initiated a traffic stop. In response to Officer Blair, the Corvette immediately pulled over and stopped. Before exiting his patrol car, Officer Blair radioed dispatch requesting additional officers. Officer Blair saw the driver, later determined to be Reynolds, exit the Corvette and hold on to the door for balance. Officer Blair noted that Reynolds had slurred speech, glazed and bloodshot eyes, and smelled of alcohol. With the aid of the two other officers that arrived at the scene, Officer Blair advised Reynolds that he was under arrest for DUI. Reynolds was transported to the Ya-lobusha County Jail where Officer John Hernandez administered Reynolds an In-toxilyzer .test after a twenty-minute period of observation. Reynolds blew into the Intoxilyzer machine, but he stopped blowing before an accurate breath sample could be gathered. As a result, the Intoxilyzer printed out a DUI refusal. Reynolds was taken to the sheriffs department where he was formally charged with DUI.
¶ 6. At the bench trial, the City of Water Valley put on two witnesses: Officers Blair and Hernandez. On cross-examination, Officer Blair admitted that at no time during his contact with the Corvette did he witness any traffic violations or improper driving. Officer Blair also admitted he saw no indication that Reynolds was driving under the influence. Further, on direct examination, Officer Blair testified that he called in the Corvette’s license plate number to dispatch because:
[t]o me, they were acting suspicious, especially when, you know, you’re behind me on one street, I turnfed] around to check a building[,] and then I [saw] that same vehicle, and then when[ ] the passenger pointed at me and they slowed down really slow, you know, five miles to eight miles an hour when the speed limit is [twenty-five], it just threw up red flags saying that, you know, I might just need to check to see. It’s a nice car. It’s a Corvette. I want to see if it might be stolen, so I ran the license plate[,] and it said — a dispatch came back who it belonged to, Mr. John Reynolds and there were negative 29s, which means it’s not wanted or stolen out of anywhere.
Reynolds offered no witnesses, but he did file a motion for a directed verdict and a motion to dismiss on the ground that there was insufficient probable cause for Officer Blair to have initiated a traffic stop. The circuit judge denied both motions and found the City had provided sufficient evidence to support Officer Blair’s stop of Reynolds and subsequent arrest.
STANDARD OF REVIEW
¶ 7. Generally, “[t]he [appellate court] applies a mixed standard of review to Fourth-Amendment claims. Whether probable cause or reasonable suspicion exists is subject to a de novo review.” Eaddy v. State, 63 So.3d 1209, 1212 (¶ 11) (Miss.2011) (internal citation omitted). This Court limits the de novo review of the court’s determination to “historical facts reviewed under the substantial evidence and clearly erroneous standards.” Id. (internal citations omitted).
¶ 8. In the current ease, there is no factual dispute concerning the circumstances of the traffic stop; therefore, we do not need to address whether the circuit court’s determination of the facts was based on substantial evidence. Officer Blair was the only witness presented to testify regarding the circumstances that led to the traffic stop; Reynolds did not testify or present any evidence to the contrary. We will only review the circuit court’s application of the law to the undisputed facts. Thus, our standard of review *600 for the application of the law to the facts receives a de novo review. See Dies v. State, 926 So.2d 910, 917 (¶ 20) (Miss.2006).
DISCUSSION
¶9. This case requires that we closely analyze whether a police officer’s investigatory stop was the result of reasonable suspicion based upon specific and articulable facts, which, if taken together with rational inferences from those facts, would result in the conclusion that criminal activity has occurred or is imminent. See Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); McCray v. State, 486 So.2d 1247, 1249-50 (Miss.1986). If it is determined the police officer did not have the requisite reasonable suspicion, then evidence obtained during the investigatory stop, in this case evidence of DUI, is deemed fruit of the poisonous tree and is inadmissable. See Haddox v. State, 636 So.2d 1229, 1233 (Miss.1994). After close review of the record in this ease, we conclude the investigatory stop was not based on specific and articulable facts that a crime had occurred or was imminent.
I.REASONABLE SUSPICION
¶ 10. Reynolds argues his conviction should be reversed because Officer Blair did not have probable cause to conduct the traffic stop that led to his arrest and DUI conviction. He asserts that Officer Blair failed to articulate any illegal activity or traffic violation that gave Officer Blair sufficient probable cause or reasonable suspicion to initiate a traffic stop. We agree.
¶ 11. When he pulled over Reynolds, Officer Blair initiated an investigatory stop pursuant to Terry, 392 U.S. at 8, 88 S.Ct. 1868. An officer may initiate an investigatory stop pursuant to Terry as long as the officer has an “objective manifestation that the person stopped is, or is about to be, engaged in criminal activity[.]” McCray, 486 So.2d at 1249-50 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). In Gonzales v. State, 963 So.2d 1138, 1142 (¶ 14) (Miss.2007), the Mississippi Supreme Court stated:
To determine whether the search and seizure were unreasonable, the inquiry is two-fold: (1) whether the officer’s action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place. Terry, 392 U.S. at 19-20, 88 S.Ct. 1868. In order to satisfy the first prong, the law enforcement officer must be able to point to “specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.” Id. at 21, 88 S.Ct. 1868.
(Emphasis added). Further, in this Court’s decision in Qualls v. State, 947 So.2d 365, 371 (¶16) (Miss.Ct.App.2007) (quoting Anderson v. State, 864 So.2d 948, 951 (¶ 13) (Miss.Ct.App.2003)), we held “ ‘mere hunches’ or ‘looking suspicious’ [are] insufficient to establish reasonable suspicion for an investigatory stop.”
¶ 12. At the bench trial, Officer Blair testified that Reynolds’s behavior was suspicious and initiated an investigatory stop based upon the following events:
1. Reynolds stopped six-car lengths behind him at the stop light;
2. The car slowed its speed dramatically upon seeing the officer; and
3. The car, although on a public street, was driving toward the elementary school at 4:30 a.m.
The traffic stop ultimately led to Reynolds’s arrest and conviction of DUI. Based on this evidence alone, we find Officer Blair did not have reasonable suspicion *601 sufficient to initiate an investigatory stop under the Terry standard. At the bench trial, Officer Blair testified: Reynolds did not violate any traffic laws; the car had not been reported stolen; and there was not any other suspicious behavior beyond what was previously described. Further, Officer Blair testified that Reynolds did not exhibit any of the usual signs of DUI, such as swerving, failing to dim headlights, or abrupt stopping and starting. He also testified that one reason he was suspicious of the Corvette and decided to initiate the stop was based on the fact that the Corvette was driving toward the elementary school. He testified there “had [been] some break-ins both at the school, high school, [and] other businesses, that’s why I was checking Dollar General, so I wanted to turn around and see why they were at the elementary school.” It is unclear from the record whether the elementary school or the high school had been broken into in the past, when the alleged break-in had occurred, and whether the suspects of the break-in had been apprehended. For example, had the suspects already been apprehended, it might not have been reasonable for Officer Blair to be suspicious of a car driving toward the elementary school. Further, once he turned around, Officer Blair saw that the Corvette had not stopped at the elementary school, nor was it doing anything suspicious at the school, yet he still proceeded to initiate the traffic stop. It was not until after Reynolds had exited the car that Officer Blair began to suspect Reynolds might have been drinking and driving. The supreme court has held that if the seizure was an unlawful exercise of the officer’s authority, then any evidence that results from the unlawful seizure, in this ease evidence of a DUI, is considered fruit of the poisonous tree and should be suppressed. Haddox, 636 So.2d at 1233. Considered as a whole, these acts of “suspicious behavior” do not demonstrate Reynolds had committed any criminal act or that one was imminent. Officer Blair might have been correct under the circumstances in concluding that the Corvette looked suspicious at 4:30 a.m.; however, merely looking suspicious is not sufficient to justify a Terry investigative stop. There was simply no evidence Reynolds had committed any criminal offense or was about to engage in criminal activity. Since Officer Blair lacked the proper reasonable suspicion to initiate a Terry stop, any evidence he found as a result of that stop is considered fruit of the poisonous tree and should have been suppressed at the hearing.
¶ 13. We find that the circuit court erred in finding that reasonable suspicion existed to uphold Officer Blair’s investigatory stop of Reynolds. An investigatory stop based solely on a hunch or looking suspicious is not authorized. Since all of the incriminating evidence against Reynolds was discovered solely as a consequence of the unlawful traffic stop, arrest, and detention, we reverse and render Reynolds’s conviction.
II. DUI REFUSAL
¶ 14. As we have found Reynolds’s DUI conviction was not proper, this issue is moot.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF YALOBUSHA COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL AND RUSSELL, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION. MYERS, J., NOT PARTICIPATING.