LEE, C.J.,
for the Court:
¶ 1. After being detained for an investigative stop by Sergeant Shawn Word, Geno Harrell became irate, refusing to give Sergeant Word his name and social security number and refusing to follow Sergeant Word’s instructions. Sergeant Word issued Harrell an arrest citation for disorderly conduct and refusing to obey the commands of a law-enforcement officer. Harrell now appeals, arguing (1) the trial court erred when it refused to suppress the evidence of disorderly conduct and failure to obey law-enforcement commands; and (2) the trial court erred when it denied Harrell’s motion for a new trial and for acquittal.
FACTS AND PROCEDURAL HISTORY
¶ 2. On August 2, 2010, the Starkville chief of police called the police station and requested someone investigate a man walking two pit bulls near Louisville Street. The chief of police noted that the man did not seem to have control over the *606 dogs, which posed a potential danger to a pedestrian in the area.
¶ 3. Sergeant Word responded to the call. When he reached Harrell, Sergeant Word rolled down his window and attempted to make conversation with Harrell. Harrell responded but did not stop walking. Sergeant Word called to Harrell to “hold on” so he could get Harrell’s name and social security number to complete the paperwork regarding the call. Harrell became irate and demanded Sergeant Word’s name and badge number. Sergeant Word exited his car and again attempted to explain the need for Harrell’s information. Sergeant Word informed Harrell multiple times, if he would give his name and social security number, he could be “out of [there] in 20, 30 seconds.” As Harrell became more agitated, so did the dogs. Sergeant Word instructed Harrell to sit on the grass because the dogs were calmer when Harrell was seated. Harrell refused to remain seated. Eventually, animal control arrived, and Harrell gave his information to Sergeant Word. Sergeant Word issued Harrell an arrest citation for disorderly conduct and failure to obey the command of a law-enforcement officer.
¶ 4. The Starkville Municipal Court found Harrell guilty of disorderly conduct and failure to obey the command of a law-enforcement officer and fined him $500. Harrell appealed to the Oktibbeha County Circuit Court. After a trial de novo, Harrell was found guilty of the same charges and fined $250. This appeal followed.
STANDARD OF REVIEW
¶ 5. An unlawful-seizure claim is analyzed under a mixed standard of review. Trejo v. State, 76 So.3d 702, 706 (¶ 8) (Miss.Ct.App.2010). To determine if probable cause exists, this Court conducts a de novo review. Id. But this de novo review is limited to the trial court’s “decision based on historical facts reviewed under the substantial evidence and clearly erroneous standards.” Id. (citations omitted). When addressing the suppression of the evidence obtained from the unlawful seizure, the trial court’s findings of fact will only be disturbed on appeal if the trial judge “applied an incorrect legal standard, committed manifest error, or made a decision contrary to the overwhelming weight of the evidence.” Clair v. State, 845 So.2d 733, 734-35 (¶ 4) (Miss.Ct.App.2003).
DISCUSSION
¶ 6. Harrell contends that the investigative stop was an illegal seizure and that any evidence as a result of the stop should have been suppressed. Since we find this issue is dispositive, we will not address Harrell’s motion for a new trial or acquittal.
¶ 7. The Fourth Amendment to the United States Constitution and Article 3, Section 23 of the Mississippi Constitution protects people from “unreasonable searches and seizures.” A seizure occurs “[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.” Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
¶ 8. The Mississippi Supreme Court has divided “[p]olice activity in preventing crime, detecting violations, making identifications, and ... apprehending criminals” into three types of action: (1) voluntary conversations, (2) investigative stops and temporary detentions, and (3) arrests. Singletary v. State, 318 So.2d 873, 876 (Miss.1975). Here, Sergeant Word performed an investigative stop. For an investigative stop to be lawful under the Fourth Amendment, the stop must be brief, and “the officer[] [must] have ‘reasonable suspicion, grounded in specific and *607 articulable facts’ that allows the officer[] to conclude the suspect is wanted in connection with criminal behavior.” Eaddy v. State, 63 So.3d 1209, 1213 (¶ 14) (Miss.2011) (quoting Walker v. State, 881 So.2d 820, 826 (¶ 10) (Miss.2004)). Articulated another way, the officer must have a reasonable suspicion “that criminal activity may be afoot.” Terry, 392 U.S. at 30, 88 S.Ct. 1868; see also United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); Rainer v. State, 944 So.2d 115, 118 (¶ 6) (Miss.Ct.App.2006).
¶ 9. The State never contends that criminal activity was “afoot.” Neither the chief of police, who made the call, nor Sergeant Word, who responded to the call, stated he had any reasonable suspicion that Harrell was involved in any type of criminal behavior. Instead, the State argues the standard is not the “reasonable suspicion of criminal behavior” standard articulated in Terry, Trejo, Eaddy, and numerous other federal and state cases. The State asserts, “[I]t is enough if there is reasonable articulable suspicion of a potential hazard that is able to, or likely could, expose others to harm or injury.” (Emphasis added). However, the State fails to cite any supporting authority for this potential-hazard standard.
¶ 10. At trial, testimony was given regarding certain city ordinances demanding specific requirements to own pit bulls. However, no testimony was given that Harrell was in violation of any of these ordinances. Even assuming Harrell was violating a city ordinance by walking his pit bulls on leashes, Sergeant Word testified that he observed the dogs and determined that the dogs were not vicious. This occurred prior to stopping Harrell. When Sergeant Word stopped Harrell to obtain his name and social security number, he did not have reasonable suspicion that any crime — even disobeying a city ordinance — had occurred or was about to occur. Harrell’s Fourth Amendment rights were violated “because [Sergeant Word] lacked any reasonable suspicion to believe [Harrell] was engaged or had engaged in criminal conduct.” Brown, 443 U.S. at 53, 99 S.Ct. 2637.
¶ 11. If the officer did not have reasonable suspicion to perform the investigatory stop, “then evidence obtained during the investigatory stop ... is deemed fruit of the poisonous tree and is inadmissable.” Reynolds v. City of Water Valley, 75 So.3d 597, 600 (¶ 9) (Miss.Ct.App.2011) (citing Haddox v. State, 636 So.2d 1229, 1233 (Miss.1994)). Since Sergeant Word did not possess the requisite reasonable suspicion that Harrell was engaged or had engaged in criminal conduct, Harrell’s statements and actions after the unlawful stop are fruit of the poisonous tree and are, therefore, inadmissible.
¶ 12. The trial court committed manifest error when it refused to suppress the evidence of Harrell’s disorderly conduct and failure to obey law-enforcement commands. The arrest for disorderly conduct and failure to obey a law-enforcement officer would not have occurred absent the unlawful seizure. Therefore, the judgment of the trial court is reversed and rendered.
¶ 13. THE JUDGMENT OF THE OK-TIBBEHA COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO OKTIBBEHA COUNTY.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS AND FAIR, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J„ *608 DISSENTS WITH SEPARATE WRITTEN OPINION. JAMES, J., NOT PARTICIPATING.