IRVING, P.J.,
dissenting:
¶ 14. The majority finds that the Union County Youth Court properly adjudicated S.M.K.S. a delinquent child because he resisted arrest for disorderly conduct. I disagree, as I would find that Sergeant Kent illegally seized S.M.K.S., thus making S.M.KS.’s subsequent arrest illegal. Therefore, I dissent. I would reverse and *881 render the judgment of the youth court adjudicating S.M.K.S. a delinquent child.
¶ 15. Sergeant Kent responded to a “shots fired” call from dispatch. The only identifying information relayed to Sergeant Kent through the call was that the suspects were in a tan Cutlass. The dispatcher relayed no information regarding the driver or the occupants of the Cutlass. Sergeant Kent, as a result of patrolling the streets of the City of New Albany, recalled that he had seen a tan Cutlass parked at a duplex on Cleveland Street. However, Sergeant Kent did not know the owner of the Cutlass nor the identity of the person who drove the Cutlass. Based on the limited information that he had, Sergeant Kent went to the duplex on Cleveland Street. Once he arrived, he exited his car with his gun drawn and zeroed in on thirteen-year-old S.M.K.S. and his older brother. Why? Because they were positioned near the tan Cutlass — S.M.K.S. on the sidewalk and his older brother in the yard. According to Sergeant Kent, he told S.M.K.S., “Let me see your hands.” However, there is no evidence that S.M.K.S.’s hands were concealed in any manner, nor is there any testimony regarding where S.M.KS.’s hands were when Sergeant Kent made this request. There is no testimony regarding whether S.M.K.S. complied with Sergeant Kent’s initial request. Nevertheless, S.M.K.S. was subsequently arrested when he refused to comply with Sergeant Kent’s second request to “put [his] hands on the car.”
¶ 16. As our supreme court stated in Jones v. State, 798 So.2d 1241, 1247 (¶ 12) (Miss.2001), “[t]he threshold question is whether [the officer] had probable cause to initiate an arrest.” In my opinion, Sergeant Kent did not even have reasonable suspicion to briefly detain S.M.K.S., much less probable cause to arrest him. As such, the arrest of S.M.K.S. was unlawful.
¶ 17. In order for S.M.KS.’s initial detainment to have been lawful, Sergeant Kent needed “reasonable . suspicion, grounded in specific and articulable facts that [allowed him] to conclude [that S.M.K.S. was] wanted in connection with criminal behavior.” Eaddy v. State, 63 So.3d 1209, 1213 (¶ 14) (Miss.2011) (quoting Walker v. State, 881 So.2d 820, 826 (¶ 10) (Miss.2004)) (internal quotation marks omitted). When Sergeant Kent approached S.M.K.S. with his gun drawn and giving commands, he immediately effectuated a seizure, which “occurs only when the officer, by means of physical force or show of authority has in some way restrained the liberty of a citizen.” Harrell v. State, 109 So.3d 604, 606 (¶ 7) (Miss.Ct.App.2013) (citations and internal quotation marks omitted).
¶ 18. The majority says, “It was lawful for Sergeant Kent to approach S.M.K.S. for the purpose of investigating the report that shots hhd been fired from the tan Cutlass.” Maj. Op. at (¶ 11). I do not disagree, and if that had been all that Sergeant Kent did, I would agree that his actions would have been lawful. But that is not what happened. Sergeant Kent approached with his gun drawn and pointed at S.M.K.S., an unarmed thirteen-year-old child, while shouting a demand to the child to “let me see your hands.” It is interesting that Sergeant Kent never says where S.M.KS.’s hands were, but attempts, by the language employed, to convey the impression that they were in fact concealed. Further, Sergeant Kent did not say or suggest that he noticed a bulge in S.M.KS.’s pocket, which would support a reasonable assumption that S.M.K.S. may have had a gun concealed. For sure, if such a bulge existed, Sergeant Kent would have noticed and mentioned it. It is noteworthy that Sergeant Kent does not say, take your hands out of your pocket and *882 hold them up or put them up, which is the typical law-enforcement jargon that is used when a suspect’s hands are concealed.
¶ 19. The majority goes on to say, “Simply being armed, in and of itself, is not the equivalent of a seizure; particularly when an officer has reason to believe that shots had been fired.” Maj. Op. at (¶ 11). I could not agree more if all the majority means is that there was nothing wrong with Sergeant Kent having his service weapon with him when he went to investigate the shooting, as it is always proper police protocol for an officer to be armed when investigating a shooting incident. However, approaching an innocent thirteen-year-old child with the weapon trained on the child, while shouting a command to the child, is without a doubt a seizure of the child. To find, as does the majority, that it was lawful for a law enforcement officer to pull his weapon and aim it toward an unarmed thirteen-year-old child who was standing in a yard near a vehicle from which a shot had been recently fired — when there was nothing unusual about the child’s appearance, actions, or conduct to suggest that he may have been armed or had recently been involved in criminal conduct — is to strain reason and stretch the holding of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), beyond defensible boundaries. For all Sergeant Kent knew, S.M.K.S. could have been the neighbor’s child from down the street who just happened to be in his friend’s yard.
¶ 20. Despite the majority’s efforts to place Sergeant Kent’s actions within the bounds of the law, it is clear that they are not. Sergeant Kent asked no questions of S.M.K.S., or anyone else, before pointing the gun toward S.M.K.S. and demanding that S.M.K.S. surrender his freedom. It is not reasonably debatable that, based on Sergeant Kent’s show of authority, S.M.K.S. was not free to terminate the interaction with Sergeant Kent. This initial seizure of S.M.K.S. was illegal because Sergeant Kent did not have the requisite probable cause to seize him. While Sergeant Kent certainly had the right to approach and question S.M.K.S. about the Cutlass — and even frisk him to make sure that he did not have a weapon concealed— he did not have the right to immediately seize S.M.K.S. at gunpoint. For example, it would have been entirely proper for Sergeant Kent to inquire if S.M.K.S. knew how long. the Cutlass had been parked there, who owned it, who drove it there, or where that person had gone. Based on Sergeant Kent’s own testimony, the only articulable fact that he had was that the suspects were in a tan Cutlass. Sergeant Kent had no specific and articulable facts to suspect that S.M.K.S., a thirteen-year-old child, had been driving the Cutlass. Nor did he have any reason to suspect that S.M.K.S. had ever been a passenger in the Cutlass, much less a recent passenger. Further, he had no reason to suspect that S.M.K.S. was involved in any way with criminal behavior.
¶ 21. Rather than attempting to engage S.M.K.S. in a conversation to ascertain information about the driver of the Cutlass, Sergeant Kent immediately arrested S.M.K.S. by pulling a gun on him. Clearly, Sergeant Kent’s strategy was to arrest first and talk later, as his actions demonstrated that he thought it was proper to arrest anyone who was in the vicinity of the tan Cutlass, no matter that any such person may have been a chance passerby or an innocent child playing in a nearby yard.
¶ 22. This Court has affirmed that
[ a] warrantless arrest is lawful if at the moment the arrest was made, the officers had probable cause to make it — -if at that moment the facts and circum *883 stances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.
Bondegard v. State, 81 So.3d 1181, 1185-86 (¶ 16) (Miss.Ct.App.2011) (quoting United States v. Johnson, 445 F.3d 793, 796 (5th Cir.2006)). Here, Sergeant Kent certainly had no probable cause to believe that S.M.K.S. had committed any offense. From the record, it is clear that Sergeant Kent began the arrest of S.M.K.S. without any evidence that S.M.K.S. had been involved in a crime. There was no evidence to suggest that S.M.K.S. was the owner of the tan Cutlass or that he was involved in the previous alleged shooting. Therefore, Sergeant Kent lacked a sufficient basis to arrest S.M.K.S. without a warrant.
¶ 23. The majority concludes that Sergeant Kent was attempting to lawfully arrest S.M.K.S. for disorderly conduct pursuant to Mississippi Code Annotated section 97-35-7(1)© (Rev.2006), which provides:
Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which' may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person for a violation of the law, to ... [a]ct or do or refrain from acting or doing as ordered, requested or commanded by said officer to avoid any breach of the peace at or near the place of issuance of such order, request or command, shall be guilty of disorderly conduct©
¶ 24. However, without evidence that Sergeant Kent, upon his arrival on the scene, had the authority to immediately arrest S.M.K.S. for a violation of the law, S.M.K.S. had every right to resist the arrest, and it cannot be legitimately argued that S.M.K.S. was not immediately placed under arrest when Sergeant Kent got out of his patrol car with his weapon drawn and trained on S.M.K.S., as an arrest occurs when the pursuit to make the arrest begins. Pollard v. State, 233 So.2d 792, 793 (Miss.1970). When Sergeant Kent pointed his gun at S.M.K.S. and demanded that he show his hands, S.M.K.S. was under arrest even though he had done nothing illegal or given Sergeant Kent any justification for seizing his person. The majority’s finding that Sergeant Kent was making a lawful arrest of S.M.K.S. for disorderly conduct is the equivalent of finding that an officer may illegally assault a citizen and then lawfully arrest the citizen for disorderly conduct when the citizen resists the unlawful assault. That has never been the law, nor should it ever be the law.
¶ 25. For these reasons, I dissent.
ISHEE, J., JOINS THIS OPINION.