# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01209-COA

**CLIFTON DEAN A/K/A CLIFTON DION DEAN**　　　　　　**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**　　　　　　　　　　　　　　　**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/16/2018 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: ERIN E. BRIGGS |
| | CLIFTON DEAN (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/19/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND McCARTY, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1. In June 2015, a Washington County grand jury indicted Clifton Dean for murder with a firearm enhancement. After the first trial ended in a mistrial, a second trial was held on July 17, 2018. A Washington County Circuit Court jury found Dean guilty of the lesser-included offense of manslaughter with a firearm enhancement. The trial court sentenced Dean to serve twenty years for the manslaughter conviction and five years for the firearm enhancement, with the sentences to be served consecutively in the custody of the Mississippi Department of Corrections (MDOC). After the trial court denied his motion for

judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, Dean appealed his conviction.

¶2. Represented by the Office of Indigent Appeals, Dean alleges that the trial court erred in denying his motion to suppress his written statement, which he had attempted to destroy, because it was not voluntarily given. Additionally, in a pro se supplemental brief, Dean argues that (1) he was deprived of his constitutional right to a speedy trial; (2) the verdict was against the weight of the evidence; and (3) the court erred in giving and refusing certain jury instructions. Finding no reversible error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶3. On March 30, 2012, Fredrick Williams died of multiple gunshot wounds in Greenville, Mississippi. In November 2013, the police arrested Dean and Keon Mister for Williams's murder. While Dean was being transported to the municipal courthouse for a preliminary hearing, he asked police investigator Jeremey Arendale if he could talk to him about what happened that night. According to the investigator's incident report, Dean asked Arendale if he was recording their conversation; Arendale assured him that he was not. Dean then told Arendale that he had been at the apartment complex where Williams's murder occurred. Hearing gunshots, Dean saw Mister running from the area and Williams lying on the ground. Dean claimed that Williams "reached for a gun but didn't point it at him." Dean admitted to shooting Williams "with a gun that's similar to a shotgun."[1]

¶4. Although Dean initially said he would give a statement, he suddenly changed his

---

[1] Williams was shot three times—twice with a nine-millimeter pistol and once with a shotgun.

2

mind; so Arendale and Dean continued into the municipal court building, where Dean recognized Sergeant Marcus Turner and asked to speak with him. Turner took Dean to a separate room in the courthouse to talk. Turner said that Dean wanted to "keep it 100," meaning he wanted to be honest. Dean told Turner that he did not want an attorney present and proceeded to tell him what happened on the night of the shooting. Dean said he heard gunshots and saw Mister grab Williams by his hair and shoot him twice. Dean then saw Williams reach toward his waistline; so Dean told Turner that he "pulled out a shotgun and . . . shot him." Turner did not record the conversation because he did not know Dean's request to talk to him would result in a confession. Turner advised Dean to tell Arendale what he had just said to Turner. Stating that he was tired of wasting Arendale's time, Dean agreed to go to the station and give a confession. Once there, Arendale read Dean his *Miranda* rights,[2] and Dean signed the form, stating that he understood his rights.

¶5.     However, when Arendale went to turn on the recorder, Dean said he did not want to record his statement; he wanted to write it. Arendale gave him a statement form and left the room. A few minutes later, noticing that Dean was standing and not writing, Arendale went back in the room. Dean had changed his mind again and no longer wanted to give a statement. Arendale told Dean they would have to go back to municipal court and get his bail set.

¶6.     As they were walking out of the interview room, Arendale saw Dean flip a balled-up piece of paper that he was hiding behind his back into a trash can. Arendale acted like he did

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

not see the paper, but he later retrieved the paper from the garbage. Dean had scribbled out his writing to make it illegible and had ripped the paper into pieces. Arendale sent the paper to the crime lab, and the forensic document examiner was able to use software to determine the paper's content. The statement read, "The night of the murder incident, I was on my way to buy 2 cigarettes. Then all of a sudden I heard multiple gunshots. I ran around to see where did they come from. I then saw K[eon] running and a guy hit da ground. I got closer and as I got closer I seen him reach for his gun then I fired 1 shot."

¶7.    A grand jury indicted Dean on June 18, 2015.[3] Between August 2016 and July 2017, seven motions for continuances were filed by Dean, including a joint motion to continue with the State in May 2017. On December 20, 2016, defense counsel filed a motion to suppress Dean's written statement, arguing that Dean's scribbling through what was written, tearing the paper into pieces, and throwing the paper in the trash clearly indicated that his statement was not voluntarily given. The trial court denied the motion to suppress on February 15, 2017, finding Dean's oral statement to Arendale "was voluntarily made without prompting by the [i]nvestigator and is admissible." With regard to the statement retrieved from the trash can, the court concluded that since Dean wrote the statement after he had waived his *Miranda* rights, the statement was voluntary, and this voluntariness was not rescinded by his later attempts to destroy the paper.

¶8.    A trial held on December 6-7, 2017, ended in a mistrial. A second trial was held July

---

[3] Dean was released on a $100,000 bond. After he failed to appear for his arraignment hearing in 2015, a bench warrant was issued for his arrest. Dean was later located in custody at a Kansas City, Missouri jail in June 2016 and returned to Mississippi.

17, 2018. There was no objection by the defense to the admission of the written statement made at the second trial. The jury convicted Dean of the lesser-included offense of manslaughter with a firearm enhancement. The trial court sentenced Dean to serve twenty years for manslaughter and five years for the firearm enhancement, with the sentences to run consecutively in the custody of the MDOC. The trial court denied Dean's motion for a JNOV or, in the alternative, a new trial. He appeals, citing several errors.

## DISCUSSION

### I.     Trial Court's Denial of the Motion to Suppress the Statement

¶9.     Dean argues that the trial court erred in denying his December 2016 motion to suppress his written statement. He claims that the statement was not voluntarily given, noting that his actions—scribbling through the writing so that it was unreadable, tearing the paper into pieces, and discarding the statement in the trash—"indicated that he did not intend for the officers to read his statement." The State contends that Dean is procedurally barred from raising this issue on appeal because Dean failed to renew his motion to suppress his statement at his second trial or object to its admission. Therefore, the State claims that Dean's failure to raise the issue of the admissibility of his statement at the second trial, "either by objection or reference to his objection in his first trial, . . . did not properly reserve this issue for appellate review."

¶10.     Dean acknowledges that the record does not indicate whether the first trial motions and rulings were incorporated into the second trial. He claims, however, that the doctrine of the "law of the case" should apply, which has been explained by the Mississippi Supreme

5

Court as follows:

> The doctrine of the law of the case is similar to that of former adjudication, relates entirely to questions of law, and is confined in its operation to subsequent proceedings in the case. Whatever is once established as the controlling legal rule of decision, between the same parties in the same case, continues to be the law of the case, so long as there is a similarity of facts. This principle expresses the practice of courts generally to refuse to reopen what has previously been decided. It is founded on public policy and the interests of orderly and consistent judicial procedure.

*Lee v. Thompson*, 167 So. 3d 170, 176 (¶17) (Miss. 2014) (quoting *Simpson v. State Farm Fire & Cas. Co.*, 564 So. 2d 1374, 1377 (Miss. 1990), *abrogated on other grounds by Upchurch Plumbing Inc. v. Greenwood Utils. Comm'n*, 964 So. 2d 1100, 1118 (¶45) (Miss. 2007)). Dean asserts that the "court's prior order denying the motion to suppress should be view[ed] as the law of the case for the second re-trial."

¶11. In Mississippi, the law of the case doctrine generally has been applied where the appellate court has already ruled on an issue that is later raised on remand. *See Lee,* 167 So. 3d at 177 (¶18) ("If a second appeal involves the same issues and the same facts as a prior appeal, the law established in the prior appeal ordinarily applies under the law of the case doctrine."); *Holcomb v. McClure*, 217 Miss. 617, 621, 64 So. 2d 689, 691 (1953) ("[T]he rule in this State is that the law of the case as established on a first appeal will normally and ordinarily control on later trials and appeals of the same case involving the same issues and facts."). The question raised by Dean is one of first impression for our courts—whether the law of the case doctrine applies to a trial court's former pretrial ruling after a mistrial.

¶12. In this instance, we find that it does not. As stated, the doctrine "relates entirely to questions of law." *Lee*, 167 So. 3d at 176 (¶17). Our Court has held that a trial court's

6

decision to deny a motion to suppress involves a mixed review of law and fact. *Reynolds v. City of Water Valley*, 75 So. 3d 597, 599 (¶7) (Miss. Ct. App. 2011); *see also Holloway v. State*, 282 So. 3d 537, 541 (¶13) (Miss. Ct. App. 2019) ("We have a mixed standard of review with respect to the denial of a motion to suppress[.]" (citation and internal quotation marks and omitted)). Thus, we find that the law of the case is not applicable to the court's denial of Dean's motion to suppress prior to the mistrial.

¶13. Nevertheless, "[t]he legal effect of a mistrial is the equivalent of there having been no trial at all[.]" 88 C.J.S. *Trial* § 108 (2012); *see also* 58 Am. Jur. 2d *New Trial* § 6 (2012) ("A mistrial is equivalent to no trial; it is a nugatory proceeding."). The Mississippi Supreme Court has distinguished between a trial court's decision to grant a new trial as opposed to a mistrial, finding that court "was correct to deny a mistrial" as the jury had returned a verdict, and, therefore, "the trial was 'in fact over.'" *Reynolds v. Allied Emergency Servs. PC*, 193 So. 3d 625, 631 (¶17) (Miss. 2016). In accordance with this reasoning, we find that the trial court's order denying Dean's motion to suppress was not impacted by the grant of a mistrial. Therefore, we conclude that Dean has not waived this issue on appeal, and we address the merits of his claim.[4]

¶14. Dean asserts that the statement retrieved from the trash can in the interview room was not voluntarily given and that even after *Miranda* warnings had been acknowledged by him, he had "the right to invoke his Fifth Amendment privilege against self-incrimination at any time." We find that the admission of Dean's confession did not violate his *Miranda* rights

---

[4] Our reasoning should not be construed as holding that the trial court does not retain discretion to revisit its prior rulings in subsequent trial proceedings.

7

as he was not subject to interrogation when he gave his confession. Custodial interrogation is defined as "questioning *initiated by law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Alexander v. State*, 736 So. 2d 1058, 1063 (¶11) (Miss. Ct. App. 1999) (emphasis added) (quoting *Miranda*, 384 U.S. at 444). "The initiation of questioning of the suspect who is in custody by law enforcement officers triggers the need for *Miranda*; therefore, if a suspect in custody initiates the conversation, that statement may be admissible as freely and voluntarily given even without prior *Miranda* warnings." *Id*. "Voluntary statements are not barred by the Fifth Amendment and their admissibility is not affected by the *Miranda* decision." *Stevenson v. State*, 244 So. 2d 30, 33 (Miss. 1971).

¶15.    The separate opinion disagrees with our determination that Dean was not subject to custodial interrogation, highlighting testimony by Arendale that his goal was to retrieve the statement from Dean. This analysis fails to acknowledge that Dean volunteered to go to the station and provide a statement. Neither Arendale nor Turner initiated any questioning, and Arendale merely provided Dean with the requested materials to write his statement and left the room, without questioning or attempting to "elicit a statement from Dean," as asserted in the separate opinion. Nor did the officers attempt to prevent him from exiting the room with the written statement in hand.

¶16.    Furthermore, this Court has held:

> A statement by the accused is admissible if the accused was given the *Miranda* warnings, and then knowingly, intelligently and voluntarily waived the rights. *Moore v. State*, 493 So. 2d 1301, 1303 (Miss. 1986). Whether there has been a knowing, intelligent and voluntary waiver is a fact question for the trial court

8

to determine from the totality of the circumstances. *McGowan v. State,* 706 So. 2d 231, 235 (¶12) (Miss. 1997). We will reverse the trial court's decision to admit a confession only if the decision was "manifestly in error or contrary to the overwhelming weight of the evidence." *Id.* at (¶11).

*Busick v. State*, 906 So. 2d 846, 855 (¶16) (Miss. Ct. App. 2005). After voluntarily confessing to both Arendale and Turner, Dean agreed to give a statement and signed a *Miranda* waiver-of-rights form. He initiated the request to provide a written statement, and there was no evidence that his desire to provide the statement was a result of any coercion, promises, or threats.

¶17. Accordingly, we find no error in the trial court's denial of his motion to suppress the statement and its determination that Dean's statement was voluntarily given. Although Dean attempted to destroy the statement, the fact remains that he tossed it into a trash can accessible to the police. Had he, instead, retained the statement's fragments, we might agree with the separate opinion's reasoning that he "never voluntarily relinquished the words he had written to the police." Moreover, even if we were to find that it was error for the trial court to admit Dean's written statement, it would constitute harmless error since Dean voluntarily confessed to both Arendale and Turner that he had shot Williams, and they testified to this effect.

## II. Constitutional Right to a Speedy Trial

¶18. In his pro se supplemental brief, Dean claims that his constitutional right to a speedy trial was violated, citing both the duration of time between his arraignment and the first trial and between the mistrial and second trial. We will take each of these matters in turn.

### A. December 2017 Trial

9

¶19. A constitutional speedy-trial claim is analyzed under the test developed by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972), which requires a balancing of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's responsibility to assert his right to a speedy trial; and (4) prejudice to the defendant. Each case is to be considered "on an ad hoc basis." *Id*. at 530. With regard to the length of the delay, our Court has noted that "any delay from the date of arrest, indictment, or information until trial exceeding eight months is presumptively prejudicial." *Wise v. State*, 263 So. 3d 668, 672 (¶17) (Miss. Ct. App. 2018) (citing *Stark v. State*, 911 So. 2d 447, 449-50 (¶7) (Miss. 2005)). Dean was arrested in November 2013, but his first trial was not held until four years later, on December 6, 2017. Therefore, we must presume prejudice and look at the other three factors.

¶20. "Once a delay is found to be presumptively prejudicial, the burden of proof shifts to the State to show cause for the delay[,] . . . [and this Court] must determine whether the delay should be charged to the State or the defendant." *Id.* at 672-73 (¶18). We find that the reasons for the delay should be charged against Dean. Although Dean was arrested in 2013 and indicted in 2015, he was not arraigned until 2016 because he left the state while out on bond, failed to appear for his court date, and had to be extradited to Mississippi. Moreover, after his arraignment, Dean filed several motions for continuances between August 2016 and July 2017, which the trial court granted. This factor weighs in favor of the State.

¶21. As for his assertion of his right to a speedy trial, Dean filed a demand for a speedy trial shortly after his arrest. Subsequently, after his arraignment, Dean filed another motion

10

demanding a speedy trial on October 10, 2016. As already noted, however, Dean's filing of several motions for continuances resulted in the trial's delay; so we cannot find that this factor weighs against the State.

¶22. With regard to the fourth factor, the Supreme Court has stated that prejudice is to be assessed in light of three interests of the defendant that the right to a speedy trial was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. We find no prejudice in this instance. Dean was only remanded into custody after he violated the terms of his bond by failing to appear for his arraignment and leaving the state, requiring a bench warrant for his arrest. Further, Dean has not stated how his defense was impaired by this delay.

¶23. Despite the four-year delay in this case, our review under the *Barker* factors indicates that there was good cause for the delay and that Dean's constitutional right to a speedy trial was not violated.

### B. June 2018 Trial

¶24. Dean admits that the length of delay between the mistrial and the second trial was less than eight months (222 days). "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Murray v. State*, 967 So. 2d 1222, 1230 (¶23) (Miss. 2007). In *Murray*, the supreme court concluded that because the delay between the defendant's arrest and his trial was less than eight months, it was not "presumptively prejudicial"; therefore, it was unnecessary to inquire as to the other

11

*Barker* factors. Likewise, as the delay between Dean's mistrial and the second trial was not "presumptively prejudicial," there is no necessity to address the remaining factors, and we find no violation of Dean's constitutional right to a speedy trial.

### III. Weight of the Evidence

¶25. Dean also contends in his pro se supplemental brief that the verdict was against the overwhelming weight of the evidence. Specifically, he alleges that the State failed (1) to provide credible evidence of how he was developed as a suspect; (2) to produce any audio or video confession; and (3) to perform a handwriting analysis (presumably to prove that Dean actually wrote the statement admitted into evidence). "When considering a challenge to the weight of the evidence, the verdict will only be disturbed when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Smith v. State*, 275 So. 3d 100, 110 (¶35) (Miss. Ct. App. 2019). It is the role of the jury "to assess the weight and credibility of the evidence." *Id*. Viewing the evidence in the light most favorable to the verdict, "we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Roberts v. State,* 229 So. 3d 1060, 1068 (¶29) (Miss. Ct. App. 2017).

¶26. Dean has cited no authority nor made any meaningful argument in support of this issue. As this Court has held, an "appellant has the duty to make more than mere assertions and should set forth reasons for his arguments and cite authorities in their support." *White v. State*, 818 So. 2d 369, 371 (¶7) (Miss. Ct. App. 2002). If the party fails to do so, we are

12

"under no duty to consider assignments of error when no authority is cited." *Id*. Therefore, we find this assignment of error procedurally barred from review. Nevertheless, when we consider the officers' testimony regarding Dean's oral confession to them, along with Dean's knowledge that a shotgun was utilized in the crime, we cannot say that the verdict is contrary to the overwhelming weight of the evidence and sanctions an unconscionable injustice.

## IV. Jury Instructions

¶27. Dean argues that the trial court erred in giving and refusing certain jury instructions and claims the jury "was wrongfully instructed." Other than summarily citing *Moody v. State*, 202 So. 3d 1235, 1237 (¶8) (Miss. 2016), for the proposition that "presumptive instructions violate the Due Process Clause in that presumptive instructions shift the burden of proof to the defendant on an essential element of the charged offense," Dean has provided no substantive argument in support of his claim. He also fails to specify which jury instructions the trial court should have given or refused. Therefore, we cannot address the merits of Dean's claim.

¶28. Finding no reversible error, we affirm Dean's conviction and sentence.

¶29. **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McCARTY AND C. WILSON, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.**

**LAWRENCE, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶30. I concur with the majority as to its disposition regarding Dean's issues raised in his

13

pro se supplemental brief. However, I disagree with the majority's finding that the trial court did not err in denying Dean's motion to suppress his written statement. I would find that Dean's act of tearing up the statement was equivalent to asserting his right to remain silent and that the trial court's failure to exclude the statement was error. Therefore, I respectfully dissent in part.

¶31. We review the trial court's denial of a motion to suppress evidence for an abuse of discretion. *Goff v. State*, 14 So. 3d 625, 641 (¶47) (Miss. 2009). "Whether a confession is admissible is a fact-finding function for the trial court, and its decision will not be overturned unless the trial court applied an incorrect legal standard, committed manifest error, or made a decision against the overwhelming weight of the evidence." *Haynes v. State*, 934 So. 2d 983, 988 (¶15) (Miss. 2006).

¶32. In this case, the police arrested Dean on November 15, 2013. The next day, he was transported to the municipal courthouse for his initial appearance. As the majority notes, after giving an oral admission to Turner at the courthouse, "Dean agreed to go to the station and give a confession." Dean entered the interview room but asked to write out the statement instead of being recorded. He was handed a blank piece of paper and a pen, and Arendale testified that he then left the room to watch Dean from an observation room. After noticing that Dean had stopped writing, Arendale reentered the room and inquired why Dean had stopped. When Arendale went back into the interview room, "[Dean] advised he couldn't write the form out. I asked him why. He said I just changed my mind, I'm not gonna do it." Arendale saw Dean throw a wadded piece of paper into the trash can, which he later

14

retrieved. Arendale testified to the contents of the paper, stating, "I could tell that when I looked at it and it's been written on, Mr. Dean wrote on it. It had been scribbled out and torn up in approximately [twenty-five] or [thirty] pieces, and he had balled it up after he tore it up." The State sent the torn piece of paper to the Mississippi Crime Laboratory to be reconstructed and then entered that document into evidence at Dean's trial.

¶33.    "For a statement to be admissible against an accused, the accused must knowingly and voluntarily waive his Fifth Amendment right to remain silent . . . ." *Keller v. State*, 138 So. 3d 817, 848 (¶67) (Miss. 2014). I would hold that Dean clearly and unambiguously invoked his right to remain silent by scribbling out the words on the statement, tearing the written statement into twenty-five to thirty pieces, and balling it up and throwing it in the trash can. Any statement obtained after that clear invocation was obtained in violation of his constitutional rights. The officer obviously understood the import of Dean's actions because he immediately took him to municipal court for his initial appearance. He followed the law and did not question Dean further. The Fifth Amendment should apply equally to verbal and written assertions when obtained as part of a custodial interrogation as one is just as incriminating as the other. They both compel a defendant's words against him. Therefore the custodial interrogation in this case should comport with the dictates of the Fifth Amendment and Dean's obvious assertion of his intent to remain silent should have effect.

¶34.    The majority asserts that Dean was not under a "custodial interrogation" when the detective left the room for Dean to write out his statement. *See* Maj. Op. at (¶14). I disagree with that determination. Arendale testified at trial that his goal or purpose was to secure a

15

statement from Dean:

> Q: And when you took Mr. Dean into that interview room or into CID, with any defendant, what at that time was your primary goal at that point once he advised you he wants to give a statement in some form, what was your primary goal?
>
> A: Retrieve the statement.
>
> Q: And as an investigator, did it matter to you one way or another if he requested to audio record it or write it down?
>
> A: No, sir.

Whether the detective was asking questions or taking steps to elicit a statement from Dean, he was engaged in an interrogation, and Dean's *Miranda* rights were an essential part of the process. Here, the detective read Dean his *Miranda* rights, and Dean waived those rights. Dean's statement was in the form of a written statement. For purposes of argument, no one would disagree that if the detective had started questioning Dean and Dean indicated "I changed my mind, I don't want to do it," the law would require that the detective stop doing the interview. The only factual difference with that hypothetical from the facts in this case is that Dean was writing his statement when he asserted his right to remain silent as opposed to an oral assertion. Having an individual write out words to be used against him as opposed to saying those words is still an interrogation technique and is subject to the protections afforded in the Fifth Amendment. During the process of engaging in that interrogation technique, Dean never voluntarily relinquished the words he had written to the police. Instead, Dean scribbled out the words, tore the paper into "twenty-five to thirty pieces" and threw it in the trash. If that were not enough to assert his right to remain silent, when the

16

detective entered the interrogation room, Dean stated, "I changed my mind, I don't want to do it." The detective obviously understood this assertion as an expression of Dean's right to remain silent as Dean was then escorted out of the interrogation room and over to the courtroom for his initial appearance. No further interrogation was attempted.

¶35. The majority asserts that Dean's written statement was not obtained from a custodial interrogation and therefore admissible because it was a voluntary statement initiated by Dean. However, there is no doubt that Dean was in custody, as he had been arrested on a murder charge and the deputies literally had him handcuffed. The issue of whether Dean was being interrogated or not is resolved by Arendale's testimony referenced herein. The detective admitted under oath during questioning at trial that the purpose of having Dean in the room was to "[r]etrieve the statement." As a result of the unique facts of this case, I would find that was indeed a custodial interrogation. Dean's actions clearly show he invoked his right to remain silent.

¶36. The use of the reconstructed written statement was a violation of Dean's assertion of his Fifth Amendment right to remain silent. I would hold that Dean exercised his right to remain silent when he scribbled out and then tore apart his statement and then made that intention unambiguously clear when he told the detective upon reentering the room that he did not want to give a statement. Therefore, I would find that the trial court's admission of Dean's reconstructed written statement was error. However, I would hold that any error of admitting the reconstructed statement was **harmless** as the exact contents of the statement were properly admitted into evidence by virtue of other statements Dean made to other

17

witnesses.  The reconstructed written statement offered no additional details or incriminating information that had not already been legally introduced through other witnesses.  For the foregoing reasons, I concur in part and dissent in part.

**McDONALD, J., JOINS THIS OPINION.**